**A. L. K. CORPORATION, Plaintiff,**

v.

**COLUMBIA PICTURES INDUSTRIES, INC., Defendant.**

Civ. A. No. 70–3404.

United States District Court,
E. D. Pennsylvania.

Dec. 28, 1970.

---

Drinker, Biddle & Reath, Henry W. Sawyer, III, Philadelphia, Pa., for plaintiff.

Bancroft D. Haviland, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

The parties agree that defendant, a motion picture distributor, on or about April 27, 1970, granted plaintiff, the owner and operator of the 1812 Theatre —a first class, downtown Philadelphia motion picture theatre—a license for the exclusive first-run showing of the film, "HUSBANDS". Defendant contends that for reasons beyond its control, it could not deliver the film to plaintiff by the agreed upon opening date of "on or about July 8, 1970"; and, that, therefore, the licensing agreement, by its express language, terminated. Defendant admits it is about to re-solicit all Philadelphia area theatres for bids for an exclusive "first run" showing of the film to commence on or shortly after February 3, 1971. Plaintiff seeks to prevent this by a prohibitory injunction, and

also a mandatory injunction to enforce specific performance of its claimed license agreement.

A full hearing was held on plaintiff's motion for a preliminary injunction. Testimony was presented on behalf of plaintiff and defendant, oral argument and written briefs were presented immediately following the taking of testimony and supplemental briefs have been filed. Counsel agree that a prompt decision on the motion is of utmost importance to their respective clients.

There is no question of jurisdiction over the person or subject matter, which is based on "diversity", 28 U.S.C. § 1332(a) (1). Plaintiff is a Pennsylvania corporation with its principal place of business in Philadelphia. Defendant is a Delaware corporation with its principal place of business in New York City. The amount in controversy exceeds Ten Thousand ($10,000) Dollars.

Defendant's contention that the contract with plaintiff is terminated is based on the following clause of the agreement:

"PREVENTION OF PERFORMANCE—TENTH: If Exhibitor shall be prevented from exhibiting or Distributor from delivering any picture for causes beyond their direct control, respectively, (including but not limited to inability to procure necessary materials or prints, laws, Governmental rules, regulations or orders or court decrees now or hereafter in effect, the failure of the producer of the picture to make timely delivery thereof to Distributor, Acts of God, sabotage, strike, or force majeur) then this license in respect to each such picture affected shall terminate and revert to Distributor without liability to either party."

Considerable testimony dealt with the date and circumstances under which defendant notified plaintiff that it considered the contract terminated. However, if defendant's position is sound, notice would appear to be immaterial. It is clear that neither party ever agreed to or acquiesced in the others position.

There was also considerable testimony as to what the parties may have done between themselves concerning other motion pictures that on other occasions were not delivered by the "on or about" date; but no uniform practice, understanding, or trade custom was established.

The parties have agreed that the contract was regularly executed and since the situs of this contract is Pennsylvania, there is no question that Pennsylvania law applies. The sole question is the interpretation of the above-quoted portion of the contract.

The law in this area is quite clear that the interpretation of a written contract is a matter of law to be determined by the entire contract. (Rest. Cont.2d, Sec. 235(c), 236(a)).

"It is the law in Pennsylvania that in construing a contract the intention of the parties must be ascertained by the entire instrument, and each and every part of it must be taken into consideration and given effect if reasonably possible." Stevens v. Baltimore and Ohio Railroad Company, D. C., 290 F.Supp. 969, p. 970 (1967).

Further, it must be noted that where the language in the contract is clear and unambiguous, it is the duty of the Court to construe the contract in its plain and ordinary meaning. Hall Motor Sales, Inc. v. Studebaker-Packard Corporation, 145 F.Supp. 430 (1956).

The contract was a printed form prepared by defendant and presented to plaintiff. Whether the so-called "fine print" line of cases may be applicable (plaintiff's agents testified they never read the quoted clause), need not presently be decided. A reading of the entire contract leads to the conclusion that mere delay in making delivery of the film to plaintiff, irrespective of the cause of such delay, did not thereby terminate or make it terminable at defendant's option. This conclusion is supported by reading an earlier clause in the contract, which it appears would control

the termination of the contract under the circumstances in this case.

"However, in the case of any picture which has *not* been generally released by distributor on or prior to June 30th of the year following the year of the date hereof, the license thereof shall, at the sole option of distributor terminate and revert to distributor without liability."

If defendant's present contention is sound, then the above-quoted, preceding clause would appear to have no meaning. All clauses of a contract are to be construed as having significance and being consistent with each other, Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3rd Cir. 1969); 145 F.Supp. 430 (1956), *supra.* It is obvious that the clear meaning of Clause TENTH was to protect both parties from incurring monetary damages to the other for a "no fault" inability to perform—such as a destruction of the film or theatre by fire or casualty, as opposed to a mere delay in performance.[1]

Plaintiff unquestionably may have an action at law for damages but proof thereof would appear to be difficult and speculative, if not impossible, of precise proof. A motion picture is always a unique production. Plaintiff's inability to obtain the picture "HUSBANDS" for showing at its theatre may well cause an intangible loss of good will or what was described in the testimony as "theatre momentum".[2] Defendant and plaintiff both indicate that "HUSBANDS" is hoped to be an extremely popular and successful production. In seeking re-bids, defendant indicates it will request a minimum guaranteed run of twelve (12) weeks (as opposed to eight weeks under the present license), and a minimum monetary guarantee of One Hundred Fifty Thousand ($150,000) Dollars (as opposed to no guarantee under the present license). Defendant seeks to shed its contract with plaintiff in order to renegotiate more favorable terms. This, it should be noted, is subsequent to the New York opening and apparent favorable critical reaction. Such business practices, at best, appear to be questionable and lacking in good faith.

It appears probable that plaintiff will ultimately be successful. Unless defendant is restrained from licensing some other theatre from showing "HUSBANDS", plaintiff's rights to show the motion picture under its license may be forever lost.[3]

On the other hand, if in fact the picture becomes as successful as both parties apparently hope and expect, defendant will lose nothing by carrying out its agreement with plaintiff because in such event the proposed minimum monetary guarantee may well be exceeded. There is no suggestion that any other Philadelphia theatre would be more successful with the film than the 1812 Theatre. Also, if another theatre is licensed, the present litigation could conceivably involve other presently innocent third parties. The maintenance of the *status quo*, pending ultimate decision, is necessary in order to preserve the rights of the parties. Tennant & Sons, Inc. v. New York Terminal Conference, 299 F. Supp. 796 (D.C.N.Y., 1969).

At this preliminary stage, a mandatory injunction would be unnecessary and inappropriate. The *status quo* will best be maintained by restraining defendant from licensing any theatre other than plaintiff's 1812 Theatre for showing the

---

1. (See 145 F.Supp. 430, *supra,* for the proposition that the Court must use the clear meaning of the words in the contract.)

2. See Paramount Pictures v. Leader Press, 106 F.2d 229, p. 231, (10th Cir. 1939) for the proposition that good will is a subject of equitable jurisdiction.

3. "As a prerequisite to the issuance of a preliminary injunction the moving party must show that there is a reasonable probability of eventual success in the litigation and the likelihood of irreparable injury pendente lite if relief is not granted." (citations omitted) Ikirt et al. v. Lee National Corporation, 358 F.2d 726 p. 727 (3rd Cir. 1966).

**820**

film, "HUSBANDS". This will not prevent defendant from delivering the film to plaintiff for showing at the 1812 Theatre in accordance with the present licensing agreement.

If this preliminary injunction is improperly granted and defendant is thereby prevented from licensing another theatre with a substantial monetary guarantee, and the picture proves to be unsuccessful, defendant might incur substantial but purely monetary damages. Therefore, a substantial bond should be posted by plaintiff.

By reason of the foregoing, the following Order is entered:

### ORDER

It is ordered and decreed that pending final determination of the issues in this matter, upon plaintiff giving security, pursuant to Fed.R.C.P. 65(b), in the sum of Seventy-Five Thousand ($75,-000) Dollars, the defendant, Columbia Pictures Industries, Inc., its agents, servants, employees and attorneys be and they and each of them are hereby jointly and severally enjoined and restrained from licensing or contracting to license or showing for public viewing the motion picture "HUSBANDS" in any theatre or place of public exhibition within the City of Philadelphia, Pennsylvania, other than to plaintiff for showing at its 1812 Theatre.