### A. L. K. CORPORATION

v.

### COLUMBIA PICTURES INDUSTRIES, INC., Appellant.

### No. 71-1015.

United States Court of Appeals, Third Circuit.

Argued Feb. 17, 1971.

Decided April 7, 1971.

**762**

Bancroft D. Haviland, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Michael R. Gardner, Philadelphia, Pa., on the brief), for appellant.

Henry W. Sawyer, III, Drinker, Biddle & Reath, Philadelphia, Pa. (James Eiseman, Jr., Melvin C. Breaux, Philadelphia, Pa., on the brief), for appellee.

Before FREEDMAN,* SEITZ and ROSENN, Circuit Judges.

OPINION OF THE COURT

SEITZ, Circuit Judge.

This is an appeal from an order of the district court, 320 F.Supp. 816, granting plaintiff's motion for a preliminary injunction against defendant's licensing or contracting to license the showing of a particular motion picture at any theatre within the Philadelphia area other than that owned by plaintiff.

In April of 1970, defendant (Columbia), a motion picture distributor, granted to plaintiff (The 1812), the owner and operator of The 1812 Theatre, a license for the exclusive first-run Philadelphia exhibition of a motion picture entitled "Husbands." Shortly after the licensing agreement was executed, however, Columbia notified The 1812 that it would not be able to deliver "Husbands" on or about the proposed delivery date of July 8, 1970 [1] because of difficulties between Columbia and John Cassavetes, the producer of the motion picture, concerning the final cutting of the film. After a delay of several more months, Columbia finally informed The 1812 that it was invoking a clause in the agreement which purportedly terminated the license whenever Columbia, for reasons beyond its direct control, failed to obtain timely delivery from the producer. Columbia therefore told The 1812 that it intended to solicit new bids from all Greater Philadelphia first-run theatres for the exclusive license to exhibit "Husbands." Denying that the agreement had terminated, The 1812 then brought the present diversity action, seeking to enjoin Columbia from resubmitting "Husbands" for bids, to compel specific performance of its licensing agreement with Columbia, and to recover damages.

After a hearing on plaintiff's motion for a preliminary injunction, the district court interpreted the licensing agreement as not being subject to termination by Columbia merely because of the pro-

---

* Judge Freedman participated in the consideration of this case, but died before any disposition was made.

1. This date was contained in Columbia's initial solicitation of bids for the exclusive first-run rights to "Husbands," but was not specifically included in the formal licensing agreement which was eventually submitted to the plaintiff. Although Columbia now claims there is no evidence that it ever executed the formal agreement, it does admit that a contract was created when it accepted The 1812's bid in response to the solicitation. It is not now necessary for us to decide what consequences, if any, would attach if it ultimately appears that Columbia did not execute the formal agreement.

ducer's failure to make timely delivery. Ruling that every motion picture is a "unique" production and that The 1812's inability to obtain "Husbands" might cause an intangible loss of good will, which it described as "theatre momentum," the court concluded that The 1812 would not have an adequate remedy at law for breach of contract since proof of damages would be difficult and speculative, if not impossible. The court thus found a probability that plaintiff would ultimately be successful on the merits and preliminarily enjoined Columbia from licensing the movie to any exhibitor in Philadelphia except The 1812. Unless the status quo were preserved, the court reasoned, plaintiff's rights under its license might be lost forever. If the preliminary injunction were ultimately determined to have been improvidently granted, on the other hand, Columbia would only sustain pecuniary damages, which could be prevented by requiring The 1812 to post a substantial bond.[2]

■■ As a prerequisite to the issuance of a preliminary injunction the moving party must generally show: (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo. Ikirt v. Lee National Corp., 358 F.2d 726, 727 (3d Cir. 1966). In applying these criteria, a district court must have considerable discretion because of the infinite variety of situations which may confront it. Nevertheless, its discretion is not unlimited and must be guided by the traditional principles of equity. Without reaching the substantial question of contractual interpretation decided by the district court, we find that plaintiff has failed to satisfy the second of the above prerequisites for interlocutory injunctive relief.

■ Admittedly, the denial of a preliminary injunction in this case would permit Columbia to resolicit bids on "Husbands," with the resulting possibility that plaintiff's asserted rights to the film will be lost. This injury cannot be considered "irreparable," however, unless plaintiff demonstrates that its legal remedies are either inadequate or impracticable. Generally speaking a breach of contract results in irreparable injury warranting equitable relief in two types of cases:

"1. Where the subject-matter of the contract is of such a special nature, or of such a peculiar value, that the damages, when ascertained according to legal rules, would not be a just and reasonable substitute for or representative of that subject-matter in the hands of the party who is entitled to its benefit; or in other words, where the damages are *inadequate;*

2. Where, from some special and practical features or incidents of the contract inhering either in its subject-matter, in its terms, or in the relations of the parties, it is impossible to arrive at a legal measure of damages at all, or at least with any sufficient degree of certainty, so that *no* real compensation can be obtained by means of an action at law; or in other words, where damages are *impracticable.*"

4 Pomeroy, Treatise on Equity Jurisprudence § 1401, at 1033–34 (5th Ed. 1941) (emphasis in original); *see* Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 A. 973, 974 (1902).

Against this legal background, plaintiff asserts that its injury from the denial of a preliminary injunction cannot be adequately compensated by monetary damages because "Husbands," like all movies, is a unique production which will have a distinctive effect upon The 1812's "theatre momentum." Plaintiff further contends that damages would be impracticable because, if The 1812 does not acquire this particular picture, the value of its lost "momentum" will be impossible to calculate with any reasonable degree of certainty. Despite these con-

---

2. A. L. K. Corp. v. Columbia Pictures Indus., Inc., 320 F.Supp. 816 (E.D.Pa.1970).

tentions, we think that plaintiff has failed to prove that its injury will in fact be irreparable so as to make interlocutory equitable relief appropriate in this case.

It is true that every motion picture is unique in the sense that no two are identical, but such a characterization does not end our inquiry since the inability to obtain a particular film does not of itself show that "nothing can answer the justice of the case but the performance of the contract in specie * * *." Philadelphia Ball Club v. Lajoie, *supra* at 974. Here, although the parties entered into a commercial contract whose primary purpose was one of mutual pecuniary benefit, The 1812 maintains that "Husbands" has a value which is so extraordinary that the theatre's mere recovery of lost profits would be inadequate. In so doing, it seizes upon what it describes as a definite, though intangible, asset known as "theatre momentum." The 1812 argues that there is intense competition among "first-class" motion picture theatres to create a special image which will enhance their drawing power. If large numbers of people are attracted to one particularly outstanding movie, plaintiff says, they will also gain an impression of the theatre's atmosphere, personnel, and type of clientele and will be exposed to trailers of coming attractions so that they will later return to the same theatre on the strength of its image as a pleasant place where fine pictures are shown. Plaintiff describes this combination of circumstances as similar to good will in that it promotes the forward movement of the theatre's business by maintaining and increasing patronage. Each good picture, it says, adds an increment to the momentum, and a withholding of any increment will in some way forever retard the growth of momentum.

■ Even assuming that an asset such as theatre momentum does exist and that its value is not measurable in monetary terms, the record here does not disclose that plaintiff's failure to acquire "Husbands" will cause any irreparable damage to this asset. Although, as previously stated, all motion pictures are somewhat "unique," certainly some pictures are fungible with respect to their effect upon theatre momentum.[3] The injury contemplated by the denial of a preliminary injunction must be actual and of serious consequence, not merely theoretical. We find that The 1812 has failed to demonstrate that "Husbands" will have any effect upon its momentum different from that of other available motion pictures of the same type.[4]

Thus, even if a breach of contract is ultimately found, the only cognizable injury which The 1812 has established that it may sustain is a loss of income —the difference between the income which could have been earned by showing "Husbands" as contracted for and that actually earned during the same period. This is capable of measurement and can adequately be remedied by monetary damages if The 1812 succeeds on the merits. D. W. H. Corp. v. Twentieth Century-Fox Film Corp., 182 F.Supp. 912, 913 (E.D.Pa.1960). In addition, we see nothing to prevent The 1812 from successfully rebidding for "Husbands" [5]

---

3. One of The 1812's witnesses testified: "On Chestnut Street, where Theatre 1812 is located, it is highly competitive with other theatres, but this theatre has distinguished itself by having the type of motion picture that Chestnut Street patrons like. 'Husbands' is this *type* of motion picture." (emphasis added)

4. *Cf.* Campbell Soup Co. v. Wentz, 172 F. 2d 80, 82–83 (3d Cir. 1948).

5. Columbia has represented to this court that, pursuant to its obligations under an antitrust decree, it is required to and will offer "Husbands" for new bids without discrimination to The 1812 and all of The 1812's competitors.

In its request for new bids, Columbia will propose a guaranteed minimum run of 12 weeks instead of 8 weeks as guaranteed in its agreement with The 1812. There will also be a proposed minimum monetary guarantee by the exhibitor to Columbia of $150,000. The agreement with The 1812 contains no such provision.

and, if eventually successful in proving a breach of contract, recovering appropriate damages.

Because there is no evidence that plaintiff will be irreparably injured *pendente lite* by the denial of interlocutory relief, we find that the district court abused its discretion in preliminarily enjoining Columbia's resolicitation of bids.

The order of the district court will be reversed.