Mildred **GALFAND**, on behalf of herself and on behalf of American Investors Fund, Inc., Plaintiff,

v.

George A. **CHESTNUTT**, Jr., and Chestnutt Corporation, Defendants,

**American Investors Fund, Nominal Defendant.**

**Civ. A. No. 73–1516.**

United States District Court,
E. D. Pennsylvania.

July 13, 1973.

---

\* Of course, the Court expresses no view on the propriety or substance of such possible defenses.

292

Richard A. Ash, Philadelphia, Pa., for plaintiff.

H. Laddie Montague, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM

BRODERICK, District Judge.

This is a shareholder derivative action filed on July 6, 1973. A hearing was held on July 11, 1973 on plaintiff's request for a preliminary injunction restraining the defendant, American Investors Fund, Inc. (Fund) from conducting its annual meeting scheduled for July 17, 1973 in Greenwich, Connecticut and barring the use of the proxies. The defendant filed on July 11, 1973 a motion to transfer this action to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

The complaint alleges that defendants George Chestnutt and Chestnutt Corporation, the Fund's investment advisor, have entered into a self-dealing investment advisory agreement which is unfair to the shareholders and that the proxy statements requesting shareholder approval of the agreement conceal the real nature of the proposal.

The plaintiff claims that the proposed investment advisory contract results from a violation of the fiduciary duty set forth in Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a–35(b). Plaintiff further alleges that as part of the plan the defendant, George A. Chestnutt, Jr., a citizen of Greenwich, Connecticut and President of the Fund and the President of Chestnutt Corporation, utilized his control of the other directors of the Fund by virtue of his 47% ownership of the stock of the Fund to induce the directors to breach their fiduciary duties by accepting the proposed new investment advisory agreement which has been proposed for ratification at the annual meeting on July 17, 1973. The plaintiff alleges that the proxy material is false and misleading in that it states:

*as a result of cost increases over which neither the fund nor the advisor can exercise control,* the FUND and the advisor have determined that the 1% annual expense ratio limitation in the current Advisory Agreement shall be increased to 1½%. (Emphasis added)

Pursuant to the plaintiff's request for a preliminary injunction to enjoin the defendants from conducting the annual meeting scheduled for July 17, 1973, and the defendant's motion for a change of

venue, this Court scheduled a hearing for July 11, 1973. Due to the fact that the annual meeting is scheduled for July 17, 1973, this Court reserves decision on the defendant's motion for a change of venue pursuant to 28 U.S.C. § 1404(a) and herein decides the plaintiff's motion for a preliminary injunction.

Plaintiff's first contention in support of her motion for a preliminary injunction is that the proxy solicitation material being used to obtain shareholder approval for the proposed modification of the investment advisory agreement violates Rule 14a–9 of the Securities and Exchange Commission in that it falsely states that the change is proposed "as a result of cost increases over which neither the Fund nor the advisor can exercise control." The plaintiff's second ground is that the directors have breached their fiduciary duties in proposing the modification of the agreement imposed by Section 36(b) of the Investment Company Act of 1940, 15 U. S.C. § 80a–35(b), as it is a self-enrichment proposal which is contrary to the best interests of the Fund.

The only evidence introduced by the plaintiff in support of the preliminary injunction motion is the deposition of the defendant, George Chestnutt, Jr., the Fund's April 30, 1973 prospectus, the Fund's proxy statement for the July 17, 1973 meeting, and the annual report of the Fund.

The Fund's proxy solicitation statement for the July 17, 1973 annual meeting provides as follows, in pertinent part:

## APPROVAL OF THE TERMS OF NEW ADVISORY AGREEMENT

As a result of cost increases over which neither the Fund nor the Adviser can exercise control, the Fund and the Adviser have determined that the 1% annual expense ratio limitation in the current Investment Advisory Agreement shall be increased to 1½% of average monthly net assets in the contract. Heretofore, the Advisory Contract required the Adviser to reimburse the Fund to the extent that total annual expenses (exclusive of interest and taxes) exceeded 1% of average monthly net assets. Under the new agreement, no reimbursement from the Adviser would be required unless and until total annual expenses of the Fund (again, including interest and taxes) exceeded 1½% of average monthly net assets. The Investment Advisory fee schedule would not be changed under the new agreement; however, the higher allowable expense ratio limitation would benefit the Adviser by reducing the risk that some or all of the advisory fee would have to be reimbursed to the Fund due to an increase in rates for other expenses or changes in the average account size of American Investors Fund shareholders. No higher fees or costs would have been incurred by the Fund had the proposed new Agreement been in effect in 1972.

The contract provides that the total expenses of the Fund (exclusive of interest and taxes but including the advisory fee) shall not be more than 1½% of the average monthly net assets of the Fund. The Board of Directors of the Fund has agreed, however, that should the Fund register its shares for sale in states which impose a more stringent expense limitation, the Adviser will reimburse the Fund for expenses above the limitation imposed by such states. The Board of Directors of the Fund and the Adviser contemplate making undertakings to certain states in which Fund sales are being made, which undertakings would require the Adviser to reimburse the Fund to the extent that total expenses of the Fund (exclusive of interest and taxes) exceed 1½% of the first $30 million and 1% of the excess over $30 million. However, no assurance can be given that the annual expense ratio will in fact be at a level less than 1½% of average monthly net assets.

The proposed new Agreement appears as pages 16–20 of this Proxy

Statement. Approval of the new Investment Advisory Agreement could, to the extent deemed appropriate by defense counsel, be used as a defense in the Fogel Litigation described in this Proxy Statement at pages 9 and 10. All provisions of the proposed Investment Advisory Agreement are the same as those contained in the current Agreement with the exception of the effective date and the change in the expense ratio limitation.

To be adopted, the new Agreement must be approved by a majority of directors who are not parties to such Agreement or interested persons of any such party and must be authorized by a vote of a majority of the outstanding shares of the Fund; by definition contained in the Investment Company Act of 1940 this means a vote of (a) holders of 67% or more of the shares of the Fund present if holders of more than 50% of the outstanding shares of the Fund entitled to vote at the meeting are present in person or by proxy, or (b) holders of more than 50% of the outstanding shares of the Fund entitled to vote at the meeting, whichever is less.

The Fund's proxy solicitation statement also provides the information concerning the officers and directors of the Fund and the Chestnutt Corporation and their financial interests in both the Fund and Advisor Corporation. Mr. Chestnutt in his deposition explained the proposed change as follows:

I pointed out first of all that we were in a severe bear market, the extent of which could not be positively predicted, and it was possible that the fund would have further shrinkage in assets. I pointed out that simultaneously with this bear market in stocks we were undergoing one of the greatest inflations that this country has seen since at least going back to the end of World War I, and that costs of the fund were basically out of control. All the Bank of New York, for example, had to do was announce a price increase for a certain function and there was nothing we could do about it, and that inevitably, with the inflation rate out of control, expenses were going up and if contrarily the market kept going down it would be inevitable that somewhere down the road, if things didn't change, that it would reach the unfair proportions of perhaps bankrupting the adviser, or causing the adviser to have to completely get out of the business; that there was a very strong possibility that way down the line something like that could happen, and that I felt that the expense limitation was unfair and I also pointed out that most of the States that I knew about that had originally imposed the one percent limitation, had been convinced by various funds and managements of those funds that the limitation was grossly unfair and had relaxed their rules accordingly. And that specifically California had done so to the extent of allowing that limit—the one percent limitation to apply to only the excess over the first thirty million dollars, and that we could still get in all of the States that were important if we conformed our contract with what those States had already recognized was fair and equitable, and that we should proceed to do it. That was my presentation of the broad overall picture, and a discussion took place among all of the directors, and I do not recall any of them seriously questioning the validity of the basic fundamentals that I presented.

Information prepared by officers of the Fund and read into the record during the deposition of Mr. Chestnutt shows that while the net assets of the Fund decreased by 15% during the period from 1967 to 1972, the Fund's expenses, excluding the advisory fee, increased by 70% or from $508,340 to $865,010.

■ The standards for the issuance of a preliminary injunction require the moving party to demonstrate a reasonable probability of eventual success on the merits and irreparable injury *pen-*

*dente lite.* This Court has broad discretion, since its task involves weighing the benefits and burdens that the injunction will have on each of the parties and the public. Penn Galvanizing Company v. Lukens Steel Co., 468 F.2d 1021 (3rd Cir. 1972).

The Plaintiff contends that the directors have breached their fiduciary duty to the Fund by proposing the modification of the investment advisory agreement. The plaintiff claims that the proposed Agreement is not fair and results from self-dealing, contrary to the best interests of the Fund. The plaintiff also contends that the proxy material is false and misleading in that it states that the proposed change in the advisory agreement results from cost increases over which neither the Fund nor the advisor can exercise control.

There is insufficient evidence in the record to enable the Court to find, with reasonable probability, that plaintiff will succeed in proving either contention at the trial on the merits. Section 36(b) of the Investment Company, 15 U.S.C. § 80a–35(b) provides, in pertinent part:

(b) For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security hold-

ers thereof to such investment adviser or person.

Section 36(b)(1) of the Act, 15 U.S.C. § 80a–35(b), provides:

It shall not be necessary to allege or prove that any defendant engaged in personal misconduct, and the plaintiff shall have the burden of proving a breach of fiduciary duty.

■ In considering transactions where fiduciaries have conflicts of interest, such as Mr. Chestnutt and the Chestnutt Corporation in the instant case, such transactions will be upheld only if they are determined to be fair. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). The test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain; there must be a reasonable proportion between benefits and burdens, and there must be full disclosure. Pepper v. Litton, *supra*; Globe Woolen Co. v. Utica Gas & Electric Company, 224 N.Y. 483, 490, 121 N.E. 378, 380 (1918). There is not sufficient credible evidence in this record to enable this Court to find a reasonable probability that the plaintiff will succeed in proving that the proposed agreement is unfair, or that there was not a full disclosure.

This record, at this stage, contains little, if any, evidence that the proposed Agreement is "unfair." The proxy statement sets forth the benefit of the new agreement to the Advisor and the burden to the Fund. As stated by Chief Judge Lord in Allen v. Penn Central Company, 350 F.Supp. 697, 702 (E.D. Pa.1972):

"It is easy to find small errors and trivial omissions in any proxy statement, but '[r]easonable latitude in this area is important if nit-picking is not to become the name of the game.' Kohn v. American Metal Climax, Inc., 458 F.2d 255, 267 (C.A.3, 1972)."

The real test is whether the proxy statement "when read as a whole by a reasonable shareholder, conceals the real nature of the proposal for which the

shareholder's vote is being sought." There is not sufficient credible evidence in this record to enable this Court to find a reasonable probability that the Plaintiff will succeed in proving that the proxy material conceals the nature of the proposal to the shareholders; and that it does not convey "an honest and candid picture of the proposal." *Allen v. Penn Central Company, supra,* at p. 702.

 The Court, therefore, concludes that the plaintiff has not established the first prerequisite for the issuance of a preliminary injunction—a reasonable probability of eventual success on the merits.

The second requirement for the issuance of preliminary relief is irreparable injury *pendente lite.* Plaintiff has failed to demonstrate any threat of irreparable harm if the shareholders' meeting goes forward on July 17, 1973, and the new advisory agreement, which does not become effective until September 1, 1973, is approved. Injury cannot be considered irreparable "unless plaintiff demonstrates that its *legal remedies* are *either inadequate or impracticable."* A.L.K. Corporation v. Columbia Pictures Industries, Inc., 440 F.2d 761, 763 (3d Cir. 1971). (Emphasis added.)

If the plaintiff ultimately prevails at the trial on the merits in having the new agreement declared void, plaintiff has an adequate legal remedy in damages. The new agreement does not change the old agreement except in one respect: it increases the percentage of allowable expenses from 1% to 1½%. Thus, the harm to plaintiff only occurs if expenses exceed 1%, and if the new agreement is void the defendant, Chestnutt Corporation, would be liable to the Fund in damages for that excess. Accordingly, the plaintiff has an adequate remedy at law.

In balancing the benefits and burdens that granting or denying the injunction will have on each of the parties and the public, the record shows that $65,000 has already been expended in connection with the Fund's annual meeting scheduled for July 17, 1973. Should that meeting be enjoined, that money will be wasted. In contrast to the potential waste of substantial monies already expended, there is no prejudice to plaintiff and the other shareholders if the annual meeting proceeds as scheduled. To the extent action taken at the annual meeting may result in a voidable contract, damages, if any, may be recovered from the defendants.

In conclusion, the plaintiff has not demonstrated a reasonable probability of eventual success on the merits or irreparable injury *pendente lite.* The plaintiff has also failed to demonstrate that the harm suffered by the plaintiff and the shareholders if the injunction is denied outweighs the burdens that the defendants will suffer if the injunction is granted. The Court, therefore, concludes that a preliminary injunction is inappropriate.

This *Memorandum and Order* shall constitute the Court's findings of fact and conclusions of law, pursuant to Rule 52(a), Federal Rules of Civil Procedure.