**Anna T. CAPOBIANCO et al.,**
**Plaintiffs,**

v.

**The FIRST NATIONAL BANK OF PALMERTON et al., Defendants.**

**Civ. No. 74–99.**

United States District Court,
M. D. Pennsylvania.

March 15, 1974.

*late* to certain provisions in the agreement," 348 F.2d at 697. (emphasis added)

Robert L. Pratter, Philadelphia, Pa., William E. Nichols, Jr., Williamsport, Pa., for plaintiffs.

Lewis Weinstock, Philadelphia, Pa., Abe H. Frumkin, Pottsville, Pa., Roger N. Nanovic, Jim Thorpe, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

Plaintiffs are shareholders of The First National Bank of Palmerton, in Palmerton, Pennsylvania. They filed a complaint, alleging illegality in the election of bank directors at the annual meeting on January 29, 1974.

Thereafter Plaintiffs moved for a preliminary injunction and a hearing was held thereon. The matter turns on whether the notification given by Plaintiff Anna T. Capobianco of the nomination of directors to the Bank's board was in compliance with applicable law requiring information with respect to the "total number of shares that to the knowledge of the notifying shareholders will be voted for each of the proposed nominees."

The motion for a preliminary injunction must be denied as one of the chief prerequisites to the granting of such relief has not been met.

### II. Findings of Fact.

1. The First National Bank of Palmerton is a banking association organized under the National Banking Laws.

2. On or about January 4, 1974, the Bank and Defendant Silliman, its President, mailed to the stockholders of the Bank a "Notice of the Stockholders' Annual Meeting of The First National Bank of Palmerton" and a proposed proxy in favor of management's slate for the directorate.

3. Anna T. Capobianco, the Estate of Faust Capobianco, and Anna Marie Checho are the record or beneficial owners of 5,835 shares of the capital stock, $25.00 par value, of The First National Bank of Palmerton (the "Bank"), representing 36.5% of the Bank's 16,000 issued and outstanding shares.

4. James L. Leuthe and Salvatore Checho are the record or beneficial owners of 94 shares and 40 shares, respectively, of the capital stock, $25.00 par value, of the Bank.

5. Anna Marie Checho is the daughter of Anna T. Capobianco and the late Faust Capobianco and is the wife of Salvatore Checho.

6. Faust Capobianco was the husband of Anna T. Capobianco and the fa-

ther-in-law of James L. Leuthe and Salvatore Checho.

7. On January 11, 1974, Mrs. Anna T. Capobianco caused a Notification of

Nomination to be personally served on defendant Silliman.

8. The notification is as follows:

"NOTIFICATION OF NOMINATION OF CANDIDATES FOR ELECTION TO THE BOARD OF DIRECTORS OF THE FIRST NATIONAL BANK OF PALMERTON

"The undersigned shareholder of The First National Bank of Palmerton, in accordance with the provisions of Part 17 of the Regulations of the Comptroller of the Currency (12 CFR 17), hereby notifies the Comptroller of the Currency and the President of The First National Bank of Palmerton that the undersigned shareholder intends to nominate or cause to be nominated candidates for election to the Board of Directors of The First National Bank of Palmerton who are other than the candidates proposed by the present management of The First National Bank of Palmerton.

"The names, addresses and principal occupation of each of the nominees proposed by the undersigned shareholder, each of whom is hereby nominated for election as a Director of The First National Bank of Palmerton, is as follows:

| Name | Address | Principal Occupation |
| --- | --- | --- |
| James L. Leuthe | 228 North Broad St. Allentown, Pa. 18101 | Officer of garment manufacturer |
| Salvatore Checho | The Lakes Apartments Cedarcrest Blvd. Allentown, Pa. 18101 | Officer of garment manufacturer |
| Frank Horwith * | Ballietsville, Pa. 18037 | Owner-operator of trucking and hauling company |
| Franklin Longenbach * | Kunkeltown, Pa. 18058 | Real estate broker |
| Raymond F. Smith * | Delaware Avenue Palmerton, Pa. 18071 | Attorney |
| Harold M. Cooper * | 904 N. 32nd Street Allentown, Pa. 18101 | Consultant |
| Earl R. Silliman * | Columbia Avenue Palmerton, Pa. 18071 | President of The First National Bank of Palmerton |
| Henry C. Hoffman * | Brodheadville, Pa. 18322 | Insurance agent |
| Harrison S. Gruber * | Delaware Avenue Palmerton, Pa. 18071 | Owner of Hardware Store |

* Also a nominee proposed by the present management of The First National Bank of Palmerton in its Proxy Statement for the Annual Meeting of Shareholders to be held on January 29, 1974."

"To the knowledge of the undersigned shareholder, the total number of shares of Capital Stock of The First National Bank of Palmerton that will be voted for the proposed nominees, subject to the exercise of the right to vote cumulatively and distribute such votes among one or more of such nominees listed in this Notification, will be at least 7,698 shares of the Capital Stock of The First National Bank of Palmerton.

"The name of the shareholder making this Notification is Mrs. Anna Capobianco, who resides at 536 N. 7th Street, Bangor, Pennsylvania 18013. As of the date of this Notification, Mrs. Anna Capobianco owned 1900 shares of Capital Stock of The First National Bank of Palmerton."

9. On January 14, 1974, a copy of the same Notification was served on the Comptroller of the Currency of the United States.

10. 12 C.F.R. 17 is a Regulation of the Comptroller of the Currency. The Bank has adopted the procedure for shareholder notification of proposed nominees to the Bank's board of directors indicated in this Regulation, as § 1.-3 of its By-Laws. The relevant portion of the By-Laws provides:

"Such notification shall contain the following information to the extent known to the notifying shareholder:

"a) the name and address of each proposed nominee;

"b) the principal occupation of each proposed nominee;

"c) The total number of shares of capital stock of the bank that will be voted for each proposed nominee;

"d) the name and residence address of the notifying shareholder;

"e) the number of shares of capital stock of the bank owned by the notifying shareholder.

"Nominations, not made in accordance herewith may be disregarded by the Chairman of the meeting, and upon his instructions, the vote tellers may disregard all votes cast for each such nominee."

11. The Annual Meeting of the Stockholders of the Bank was held as scheduled on January 29, 1974 at 1:00 P.M. in the bank building.

12. The following persons, among others, were present at the meeting: Mrs. Anna Capobianco, Messrs. Leuthe, Checho, Silliman, Werley, Stemmler, Minnich, George, Gruber, Hoffman and Holczman.

Also present were counsel, as follows: Lewis Weinstock and Arthur Frumkin for Management of the Bank and Frederick Dreher, Robert L. Pratter, and Marjorie O. Rendell for Plaintiffs.

13. There are 16,000 shares of Capital Stock of the Bank issued and outstanding.

14. There were 15,148 shares of stock represented at the meeting.

15. Frederick Dreher, Robert L. Pratter, Marjorie O. Rendell and Plaintiffs Anna Capobianco, James Leuthe and Salvatore Checho were the duly appointed proxies of stockholders owning an aggregate of 7,782 shares of stock, and represented 51.4% of the 15,148 shares present at the meeting.

16. Messrs. Naratil, Cope and Krome, as proxies designated by Management of the Bank, represented shareholders owning 7,366 shares of stock, 48.6% of the 15,148 shares present at the meeting.

17. Defendants Werley, Stemmler and Minnich had been appointed Judges of Election by the Management of the Bank in connection with the Annual Meeting.

18. At the outset of the Annual Meeting, Mr. Silliman, the President of the Bank, acted as Chairman of the Meeting.

19. The proxies held by Mrs. Capobianco, Mrs. Rendell, Messrs. Leuthe, Checho, Dreher and Pratter, representing 7,782 shares were delivered to Messrs. Weinstock and Frumkin, examined and tabulated by them, accepted by Messrs. Silliman and Weinstock and Frumkin, and a receipt given therefor.

20. The proxies for 7,782 shares objected to Mr. Silliman acting as Chairman of the Meeting and it was moved and seconded that the Chairman be elected by a vote of shareholders.

21. The motion was ruled out of order by Silliman.

22. Minutes of the Annual Meeting held on January 16, 1973 were read at the meeting.

23. Two motions were made and seconded in connection with the determination of the number of directors to be elected at the meeting. One motion was that the size of the Board should be

fixed at nine (9), another that it should be fixed at eleven (11).

24. The Management proxies voted 7,366 shares in favor of fixing the size of the Board at eleven (11), and Mrs. Capobianco, Mrs. Rendell, Messrs. Leuthe, Checho, Dreher and Pratter, as proxies, cast 7,782 shares in favor of fixing the size at nine (9).

25. The size of the Board was fixed at nine (9), and Mr. Silliman so informed the Meeting.

26. Mr. Holczman, acting on behalf of Management, nominated Messrs. George, Gruber, Hoffman, Dannenberg, Horwith, Longenbach, Nanovic, Holczman, Cooper, Smith and Silliman as candidates for Directors of the Bank.

27. The nominations of Messrs. Leuthe and Checho were made and seconded, but the nominations were ruled out of order on the basis of an opinion letter written by Mr. Lewis Weinstock a few days before the annual meeting of the shareholders.

28. Messrs. Leuthe and Dreher moved that the nominations of Messrs. Leuthe and Checho be accepted by stockholder vote. 7,782 shares voted in favor of said motion.

29. Mrs. Capobianco, Mrs. Rendell, Messrs. Leuthe, Checho, Dreher, and Pratter submitted a ballot containing the following distribution of votes:

| | | |
|---|---|---|
| 1. | James L. Leuthe | 14,000 |
| 2. | Salvatore Checho | 14,000 |
| 3. | Frank Horwith | 14,000 |
| 4. | Franklin Longenbach | 14,000 |
| 5. | Raymond F. Smith | 14,000 |
| 6. | Harold M. Cooper | 35 |
| 7. | Earl R. Silliman | 1 |
| 8. | Henry C. Hoffman | 1 |
| 9. | Harrison S. Gruber | 1 |
| 10. | Bartine L. George | — |
| 11. | William H. Danneberg | — |
| 12. | Roger N. Nanovic | — |
| 13. | Geza E. Holczman | — |

30. The Management proxies submitted a ballot containing the following distribution of votes:

| | | |
|---|---|---|
| 1. | Bartine L. George | 13,258 |
| 2. | Harrison S. Gruber | 13,258 |
| 3. | Henry C. Hoffman | 13,258 |
| 4. | William H. Danneberg | — |
| 5. | Frank Horwith | 1 |
| 6. | Franklin Longenbach | 1 |
| 7. | Roger N. Nanovic | 1 |
| 8. | Geza E. Holczman | 13,258 |
| 9. | Harold M. Cooper | — |
| 10. | Raymond F. Smith, Jr. | 1 |
| 11. | Earl R. Silliman | 13,258 |

31. The ballots were tabulated and the certificate of the Judges of Election was prepared.

32. The certificate of the Judges of Election is as follows:

"The following 9 nominees received the largest number of the votes cast: Mr. George, Mr. Gruber, Mr. Hoffman, Mr. Horwith, Mr. Longenbach, Mr. Holczman, Mr. Cooper, Mr. Smith, Mr. Silliman."

33. Messrs. Stemmler, Werley and Minnich signed the Oath of Judges of Election and the Certificate of the Judges of Election.

34. A motion to recess the Meeting until February 7, 1974 at 1:00 P.M. was made and seconded and 7,782 votes were cast in favor of such motion.

35. A motion was made to adjourn the Meeting, which motion was defeated by a vote of 7,782 to 7,366.

36. The Meeting was declared adjourned by Mr. Silliman, purportedly acting on his authority as Chairman.

## III.  Discussion.

█ This Court has discussed the standards governing the issuance of a preliminary injunction in Skehan v. Board of Trustees of Bloomsburg State College, 353 F.Supp. 542 (M.D.Pa.1973). The criteria are:

(1) Irreparable harm to the petitioner unless the injunction is granted;

(2) Absence of substantial harm to other interested parties;

(3) Absence of harm to the public interest; and

(4) A likelihood that the petitioner would prevail on the merits of his claim.

Since I find that Plaintiffs have failed to prove that they will be irreparably harmed absent a preliminary injunction, the motion will be denied.

■■ "Irreparable harm" is a concept sounding as though it should be easy to define but which, in reality, vanishes like smoke when one attempts firmly to grasp it. Where the status quo is quite certain to be altered adversely to the Petitioner, and the change is not compensable in money damages, a preliminary injunction is appropriate to prevent the resultant irreparable loss. See A. L. K. Corporation v. Columbia Pictures Industries, 440 F.2d 761 (3d Cir. 1971). A fear of harm lurking only theoretically in the future does not justify the drastic imposition of a preliminary injunction. Holiday Inns of America v. B & B Corporation, 409 F.2d 614, 618 (3d Cir. 1969).

The Plaintiffs simply do not fulfill the requirements outlined by the case law.

### a. THEORETICAL HARM

■ The Plaintiffs' claim of irreparable harm is grounded upon the theory that the Bank's board of directors, as constituted, may make business decisions which are adverse to the Plaintiffs. In order to prevent this from happening the Plaintiffs seek to have their choice of directors seated on the board. The suggested loss is too speculative for judicial intervention on a preliminary injunction.

Plaintiffs also allege irreparable loss insofar as a cloud exists over the legality of the composition of the board of directors. Keeping in mind that the Plaintiffs seek a preliminary injunction, the cloud over the directors is no more likely to be removed by the grant of a preliminary injunction than by a denial of the requested relief because a preliminary injunction is granted subject to being vacated after the hearing on the final injunction or upon any appeal that might be taken from the Court's judgment.

### b. THE STATUS QUO

■ Obviously, in the last uncontested status of the parties Plaintiffs' directors were not on the Bank's board. The Plaintiffs would like to change that status because they consider it illegal. "Irreparable loss resulting from refusal to accord plaintiff a new status, as distinguished from interference with rights previously enjoyed by him, does not furnish the basis for interlocutory relief." Warner Bros. Pictures v. Gittone, 110 F.2d 292, 293 (3d Cir. 1940). Plaintiffs herein seek to alter the status quo, not to preserve it.

The Defendants, at the request of the Plaintiffs, have agreed not to make any major business decisions pending the outcome of the motion for a preliminary injunction and Defendants, during oral argument on the motion, indicated a willingness to continue this informal agreement until a final decision is rendered.

### c. COMPENSATION IN DAMAGES

■ If the current Bank directors take actions before the final decision by the Court which cause financial detriment to the Plaintiff, the Plaintiffs might very well have a remedy at law for the damages sustained.

The other criteria which must be met in granting a preliminary injunction appear to present no great obstacle to the Plaintiffs although they need not be discussed in view of the above.

### IV. Conclusions of Law.

1. The Plaintiffs have not met their burden of demonstrating irreparable harm.

2. The Plaintiffs have not proven the presence of a status quo which should be preserved.

3. The Plaintiffs have only proven a theoretical future loss.

4. The Plaintiffs have not proven that·they could not be compensated in damages for the loss they will allegedly suffer if a preliminary injunction is not granted.

An order in accordance with this Opinion will be entered.

