COMMERCIAL RADIO INSTITUTE,
INC., a corporation, Plaintiff,

v.

WESTERN PENNSYLVANIA CHRIS-
TIAN BROADCASTING COMPANY,
a corporation, Defendant.

Civ. A. No. 76–1292.

United States District Court,
W. D. Pennsylvania.

March 23, 1977.

David L. McClenahan, Kirkpatrick, Lock-
hart, Johnson & Hutchison, Pittsburgh, Pa.,
for plaintiff.

John B. Montgomery, Tucker, Arensberg
& Ferguson, Pittsburgh, Pa., for defendant.

OPINION

COHILL, District Judge.

This is an action for specific performance
of a written agreement and a preliminary
injunction. A preliminary injunction will
be issued pending a final hearing in this
matter.

The plaintiff is Commercial Radio Insti-
tute, Inc. (CRI) a Maryland corporation.
The defendant is Western Pennsylvania
Christian Broadcasting Company (WPCBC),

a Pennsylvania corporation. Jurisdiction lies by virtue of diversity of citizenship between the parties and the amount in controversy, which is alleged to exceed $10,000. 28 U.S.C. § 1332.

On May 2, 1973, Pittsburgh Television, Inc. filed with the Federal Communications Commission (FCC) an application for a construction permit to build and operate a new commercial television station on UHF Channel 22 at Pittsburgh, Pennsylvania. On September 26, 1973, defendant, WPCBC, also filed an application for a construction permit for Channel 22.

On December 14, 1973, Pittsburgh Television Inc. assigned its application to plaintiff, CRI.

CRI and WPCBC thus became the competitors for Channel 22. To settle the matter CRI and WPCBC executed an agreement dated August 1, 1974, whereby CRI agreed to apply for a different UHF Channel, thereby enabling WPCBC to obtain the Channel 22 permit promptly. The FCC approved the agreement, granted WPCBC's application for Channel 22 on December 2, 1974 and issued the construction permit on March 17, 1975.

The permit was good for a period of eighteen months, until September 17, 1976. During this period WPCBC obtained a modification of the permit to enable it to increase the broadcasting power of Channel 22 and an extension of the permit's expiration date to February 5, 1977.

The dispute here arises over an interpretation of Section 4A and B of the agreement of August1, 1974. It states:

"4. WPCBC recognizes certain rights of CRI in this matter which stem from equity and fundamental fairness, and in recognition of these rights, further agrees as follows:

A. WPCBC has every intention of promptly proceeding with the construction and operation of the proposed station. However, WPCBC appreciates that despite its present strong intent to immediately proceed to construct there is always the possibility, however remote, that it might not be able to do so. CRI filed initially for the proposed facility, but has agreed to amend its application to specify different facilities in order to permit a grant of the WPCBC application, thereby promptly rendering an additional television service to the people of Pittsburgh. WPCBC agrees that if because of some unknown future event it is unable to effectuate its current intention to promptly institute the proposed service, WPCBC hereby grants to CRI an option to acquire WPCBC's construction permit for reimbursement of WPCBC's full expenses, subject to the approval of the Commission, if at any time during the term of the construction permit or extensions thereof the Board of WPCBC determines that for reasons presently unanticipated, it cannot fulfill its current plans to promptly construct.

B. This option may be exercised by CRI without any necessity of formal action by WPCBC's Board if WPCBC has failed to 'substantially construct'[3] prior to the date on which a timely application to extend construction permit (FCC Form 701) must be filed under the Commission's Rules.

[3] For the purpose of this Agreement, 'substantial construction' be defined as follows: Tower and antenna, transmitter and basic studio equipment shall have been delivered to WPCBC's premises prior to the date on which a timely application to extend construction permit (FCC Form 701) must be filed under the Commission's rules, barring acts of God, labor strikes, inability of the equipment manufacturer to deliver the equipment due to material shortages or loss of transmitter site due to causes beyond the control of WPCBC."

According to CRI, since WPCBC had failed to "substantially construct" Channel 22 by the original expiration date of September 17, 1976, CRI had the right to exercise the option to acquire the WPCBC construction permit. By letter of September 21, 1976, CRI notified WPCBC of its intention to exercise the option set forth in Section 4B of the agreement.

Counsel for WPCBC responded by letter of September 23, 1976, stating that CRI's "exercise of the 'option' is either premature or the 'option' has expired."

On October 12, 1976 CRI filed its "Complaint for Specific Performance and Motion for Preliminary Injunction."

A hearing on the preliminary injunction was conducted on October 22, 1976, testimony taken and the matter taken under advisement.

■ The defendant has suggested that this court should relinquish to the FCC its jurisdiction over the matter. We do not believe this to be feasible. Certainly this court is not empowered to designate successful television channel applicants initially; this is a function of the FCC. 47 U.S.C. § 151 et seq. Neither, however, is the FCC the proper forum to adjudicate private controversies between parties involved in such applications. *Gerald J. Block*, 36 Pike and Fischer RR 2d 924 (1976); *In re Application of Transcontinent Television Corp. (WROC TV)* 21 Pike and Fischer RR 945 (1961).

### Preliminary Injunction

■ This court has great discretion in determining whether a preliminary injunction should be issued in a commercial context to grant specific performance of a contract. *A.L.K. Corp. v. Columbia Pictures Industries, Inc.*, 440 F.2d 761 (3rd Cir. 1971).

■ As a prerequisite to issuance of a preliminary injunction the moving party must generally show: (1) a reasonable probability of eventual success in litigation; and (2) that it will be irreparably injured *pendente lite* if relief is not granted. *Oburn v. Shapp*, 521 F.2d 142 (3rd Cir. 1975); *A.L.K. Corp. v. Columbia Pictures Industries, Inc.*, *supra*; *Ikirt v. Lee National Corp.*, 358 F.2d 726 (3rd Cir. 1966). When relevant, other considerations are: (3) possibility of harm to other interested persons from the grant or denial of the injunction and, (4) the public interest. *Oburn v. Shapp, supra*; *Delaware River Port Auth. v. Transamerican Trail. Tr., Inc.*, 501 F.2d 917 (3rd Cir. 1974).

The latter two factors, harm to others or the public interest, do not appear relevant considerations in this case at this point in time.

### 1. *Reasonable Probability of Eventual Success*

It appears that WPCBC would like to put off indefinitely the date on which CRI may exercise its option by obtaining modifications of the permit regardless of whether or not it ever substantially constructs the station. It is inconsistent with the language of paragraph 4 of the agreement to argue that the date by which WPCBC was required to "substantially construct" may be extended indefinitely.

■ The interpretation of a provision of a written contract is a matter of law to be determined by reference to the entire contract. Restatement Contracts § 235(c), § 236(a).

■ Paragraph 4A of the agreement refers variously to WPCBC's intention of *"promptly proceeding with the construction,"* of its *"present strong intent to immediately proceed to construct,"* of *"promptly rendering an additional television service to the people of Pittsburgh,"* of its *"current intention to promptly institute the proposed service."*

CRI's rights in this matter rest upon WPCBC's failure to proceed promptly with the construction of Channel 22. Since WPCBC intended to proceed promptly, it would appear that the deadline for its efforts, as defined in footnote 3 of the Agreement (supra), may well have been the expiration of the permit as initially issued to WPCBC. Based on the testimony taken at the initial hearing of this matter, we believe that September 17, 1976, was the date by which WPCBC had to achieve substantial construction of Channel 22.

"Substantial construction" was defined in footnote 3 as meaning that the tower, antenna, transmitter and basic studio equipment had been delivered to the site, barring acts of God, strikes or failures of suppliers. Mr. Julian Smith, president of CRI, testified that he had seen WPCBC's site for Channel 22 on October 21, 1976 and saw no tower, no antenna, no transmitting equipment and no studio. Mr. Smith testified

that to his knowledge there were no shortages of such equipment in the industry. WPCBC did not refute the obvious lack of these items on its site nor was there testimony indicating acts of God or labor strikes. According to the agreement's definition of "substantial construction" such equipment must have been delivered to WPCBC's premises prior to the date for filing a Form 701 requesting an extension. It is obvious that WPCBC had failed to substantially construct as of September 17, 1976, and it is now past February 5, 1977, the date to which the permit had been extended.

### 2. *Irreparable Harm*

The second criteria for the issuance of a preliminary injunction is irreparable harm if relief is not granted. In *A.L.K. Corp. v. Columbia Pictures Industries, Inc., supra,* Chief Judge Seitz commented:

"Generally speaking a breach of contract results in irreparable injury warranting equitable relief in two types of cases:

'1. Where the subject-matter of the contract is of such a special nature, or of such a peculiar value, that the damages, when ascertained according to legal rules, would not be a just and reasonable substitute for or representative of that subject-matter in the hands of the party who is entitled to its benefit; or in other words, where the damages are *inadequate* ;

2. Where, from some special and practical features or incidents of the contract inhering either in its subject-matter, in its terms, or in the relations of the parties, it is impossible to arrive at a legal measure of damages at all, or at least with any sufficient degree of certainty, so that *no* real compensation can be obtained by means of an action at law; or in other words, where damages are *impracticable.*'

4 Pomeroy, Treatise on Equity Jurisprudence § 1401, at 1033–34 (5th Ed. 1941) (emphasis in original); see *Philadelphia Ball Club v. Lajoie,* 202 Pa. 210, 51 A. 973, 974 (1902)." 440 F.2d 761, at 763.

If the present situation is altered, resulting in CRI permanently losing any possible right to Channel 22, CRI will have suffered irreparable harm. The property interest involved, Channel 22, is unique.

The damages flowing from the loss of Channel 22 are totally speculative and conjectural. Since Channel 22 has never been in operation, it would be impossible to prove specific damages. CRI will be irreparably injured if some sort of relief is not granted, assuring the preservation of the status quo.

### *Conclusion*

A basic function of a preliminary injunction is to maintain the status quo. *Danielson v. Local 275, Laborers International Union of North America, AFL–CIO,* 479 F.2d 1033 (2nd Cir. 1973); *Hollander v. American Oil Company,* 329 F.Supp. 1300 (D.C.Pa.1971). If we granted CRI's request for specific performance of the August 1, 1974 agreement, we would be drastically altering the positions of the parties without a final hearing on the merits. To do so would be premature.

However, to prevent the possibility of an injustice being done to the plaintiff, we will issue a preliminary injunction prohibiting defendant from selling, assigning or transferring its construction permit for Channel 22.