**EXXON CORP. et al., Plaintiffs,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants.**

**Civ. A. No. 77–61.**

United States District Court,
D. Delaware.

April 18, 1977.

See also D.C., 411 F.Supp. 1362 and 436 F.Supp. 1019.

---

Thomas Herlihy, Jr., Herlihy & Herlihy, Wilmington, Del., of counsel; William Simon and John S. Kingdon, Howrey & Simon, Washington, D. C., for plaintiff Exxon Corp.; John E. Bailey, Houston, Tex., for plaintiff Gulf Oil Corp.

John H. McDonald, Asst. U. S. Atty., Wilmington, Del., Gerald P. Norton, William A. Horne, and Roger B. Pool, F. T. C., Washington, D. C., for defendants.

MURRAY M. SCHWARTZ, District Judge.

Plaintiffs in this action are seven large petroleum companies who are respondents in a proceeding[1] before the Federal Trade Commission ("FTC"), defendant herein.[2] The complaint seeks declaratory and injunctive relief from certain subpoenas *duces tecum* issued by the Administrative Law Judge ("ALJ") presiding over the FTC case. Two of the plaintiffs, Exxon Corporation ("Exxon") and Gulf Oil Corporation ("Gulf") have moved for a preliminary injunction, pending a decision on plaintiffs' motion for summary judgment, to prevent the disclosure to Congress or to the public of the documents and information produced by the plaintiffs pursuant to the subpoenas.[3]

*Facts*

The subpoenas involved in this action were authorized by the ALJ in an order issued on November 11, 1976. The order substantially modified and reduced the scope of the subpoenas requested by counsel

---

1. In the *Matter of Exxon Corp., et al.,* FTC Docket No. 8934 (filed July 18, 1973). Texaco, Inc., a respondent in the FTC action, did not join in this case.

2. The other named defendants are the Commissioners of the FTC.

3. Doc. 6.

supporting the *Exxon* complaint ("complaint counsel") in applications filed in February and September, 1976.[4] The subpoenas *duces tecum* were issued on November 24, 1976. On January 6, 1977, the ALJ issued a protective order covering the documents subpoenaed from the respondents in the *Exxon* proceeding.[5] On the same date, the ALJ certified to the members of the Federal Trade Commission ("Commission") for their review paragraph 9 of the protective order ("paragraph 9").[6] *See* 16 C.F.R. § 23(b). On January 13, 1977, the ALJ denied the respondents' motions to quash the subpoenas.

The Commission issued an order modifying paragraph 9 in certain respects and affirming the rest.[7] Paragraph 9 describes the procedure to be used if a request is made for information supplied by the respondents to the FTC and designated "confidential" pursuant to other provisions of the protective order. The order divides the requests into two categories: 1) Official requests from a committee or subcommittee of Congress; 2) Requests from citizens, including individual members of Congress, pursuant to the Freedom of Information Act ("FOIA").[8] The January 31 order provides that if the FTC receives an official congressional committee request, the FTC must inform the committee that the party supplying the document deems the matter confidential. The FTC also must give the supplying party "ten days' prior notice where possible, and in any event as much advance notice as reasonably can be given." [9] With respect to FOIA requests for confidential information, the January 31

Order requires the FTC to give 10 days prior notice of its intent to release the requested information.

The seven plaintiffs have adopted different responses to the November 24 subpoenas. Five of the plaintiffs have agreed to permit the FTC to examine the subpoenaed documents, but allegedly have refused permission to remove or copy them, pending a determination by this Court on the merits of their suit. Exxon agreed to produce all the subpoenaed documents, but was granted a 60 day delay in beginning production. Exxon's commitment is to begin production on April 18, 1977. Gulf has begun production of the subpoenaed material including documents it considers confidential. It has not produced certain items which it has termed "super-sensitive" and has indicated it will not produce them until this Court rules on its motion for a preliminary injunction.[10]

In sum, so far as the record in this case reflects, as amplified by counsel at argument, both of the movants have agreed to produce the subpoenaed documents and Gulf has already begun turning over confidential information.[11] The purpose of this motion is to provide what the movants consider essential protection against disclosure of confidential information.

The motions of Gulf and Exxon can perhaps be most clearly analyzed in terms of the documents they seek to protect. These documents divide into two groups: 1) documents which have been subpoenaed and have not yet been produced; 2) documents which have been subpoenaed and produced. The first group consists of all the docu-

---

4. The September subpoena request constituted, in effect, a revision of the February application.

5. Exhibit C attached to Plaintiffs' Amended Complaint (Doc. 4).

6. There seems to have been some confusion about whether the ALJ certified all of his January 6 order or only paragraph 9. The Commission concluded that only paragraph 9 had been certified and declined to consider any other part of the order. *See* Exhibit C (Doc. 11). The actual order issued January 25, 1977, denying review of the entire protective order has not been made a part of the record in this case.

7. Exhibit C (Doc. 11).

8. *See* 5 U.S.C. § 552.

9. Exhibit C (Doc. 11).

10. Transcript of April 6, 1977 Argument (hereinafter Tr.), pp. 113–14.

11. *See* Doc. 16. As the other plaintiffs have not agreed to comply with the subpoena until this case has been fully adjudicated, they have not joined in the motion.

ments subpoenaed from Exxon and most of those subpoenaed from Gulf (including all documents Gulf has deemed "super-sensitive"). The second group consists only of certain materials Gulf has turned over to the FTC. The different categories will be treated separately in this opinion.

## II. *Documents Not Yet Produced*

### A. *Jurisdiction*

 The materials in this group comprise the vast bulk of the information subpoenaed from the movants, Exxon and Gulf. The Court is met at the outset with a perplexing jurisdictional problem. Federal courts are courts of limited jurisdiction and may adjudicate only disputes that constitute a case or controversy within the meaning of Article III, Section 2.[12] There can be little doubt of the existence of a dispute between the movants, Exxon and Gulf, and the FTC. The Court has very serious reservations, however, about whether this dispute falls within the constitutional case or controversy requirement.

The basic problem is summarized by a statement made by counsel for Exxon at argument on this motion: "We are merely wanting a protective order. We are not contesting what is in the subpoena."[13] As noted earlier, Exxon has agreed to comply with the subpoenas and Gulf has begun producing documents. Those actions together with the representations made at argument make it quite difficult for this Court to find the requisite case or controversy to permit it to entertain the suit. The position of Exxon and Gulf appears to be that they intend to comply with the subpoenas, no matter what this Court decides. Viewed in this light, the Court understands the concerns of the movants in limiting the disclosure of the subpoenaed

information, but these concerns simply do not present a cognizable case or controversy if the parties intend ultimately to supply all the documents requested irrespective of this suit.

Conceivably, the jurisdictional problem troubling the Court may be stated more precisely as a ripeness problem. *See Anti-Fascist Committee v. McGrath,* 341 U.S. 123, 153–56, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). That is, if the movants fulfill their commitment to produce the documents, the dispute over release may ripen into a controversy capable of invoking federal court jurisdiction if the release becomes imminent. At that point, the parties supplying the documents may seek injunctive or other federal relief through the Freedom of Information Act exemptions[14] or other relevant statute. This Court is not convinced, however, that the dispute is sufficiently "mature" at this time to permit intervention by a federal court. *See Warth v. Seldin,* 422 U.S. 490, 498–99 and n. 10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

The issue of jurisdiction as it appears in the context of this case is elusive. The parties on this motion did not brief or argue the question. Further, the remaining plaintiffs, who apparently have agreed in principle to comply with the subpoena but are awaiting a decision on their motion for summary judgment in this case before beginning production, have not had an opportunity to be heard.[15] Therefore, this Court considers it a proper exercise of its discretion to defer fuller consideration of the jurisdictional issue until the motion for summary judgment is heard. The Supreme Court has upheld the power of a district court to consider the issuance of a preliminary injunction pending a more complete examination of its subject matter jurisdic-

---

**12.** Article III, Section 2:

"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; . . . ."

**13.** Tr. p. 17.

**14.** 5 U.S.C. § 552(b); *see Chrysler Corp. v. Schlesinger,* 412 F.Supp. 171 (D.Del.1976).

**15.** The plaintiffs' original complaint was filed on February 18, 1977 and their motion for summary judgment was filed on March 18, 1977. The time for the defendants to answer expires on April 19, 1977. F.R.Civ.P. 12.

tion. *See United States v. United Mine Workers,* 330 U.S. 258, 291–93, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Accordingly, consideration will now be given to the propriety of issuing the equitable relief sought in this case.

### B. *Relief Requested*

 As part of its determination of whether to issue a preliminary injunction in a case involving review of administrative action, a court must first decide whether judicial intervention is proper at this stage of the administrative process. The FTC has described this suit as one seeking pre-enforcement review. Although some of the very same jurisdictional problems discussed above obviously undermine characterizing this suit as a pre-enforcement review action, the movants have not contested this description. Further, the principles and policies which guided Justice Harlan's opinion in the *Abbott Laboratories* trilogy and, more recently, the Third Circuit in a pre-enforcement review case involving this Court are equally relevant to the instant matter, at the very least by analogy. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Association v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Association,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); *A. O. Smith v. FTC,* 530 F.2d 515 (3d Cir. 1976). The touchstone of this Court's examination is ripeness. *See Abbott Laboratories v. Gardner, supra,* 387 U.S. at 148–49, 87 S.Ct. 1507; *A. O. Smith v. FTC, supra,* 530 F.2d at 521. Although, as noted earlier, the ripeness doctrine has its roots in the Article III

requirement of a live case or controversy, the ripeness standards applied to pre-enforcement review litigation are based more directly on considerations of judicial policy and discretion.[16] *See A. O. Smith v. FTC, supra,* 530 F.2d at 522 and n. 7.

The *Abbott Laboratories* case established two standards for determining whether pre-enforcement judicial review is proper: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner, supra,* 387 U.S. at 149, 87 S.Ct. at 1515. Even if it is assumed for purposes of this motion that the issues raised by the plaintiffs are "purely legal" and that the agency action is "final",[17] nevertheless Exxon and Gulf have failed to establish on this record the necessary hardship to justify pre-enforcement review with respect to the documents not yet produced.[18]

The Third Circuit has distilled the *Abbott Laboratories* hardship requirement into a very common sense formula:

"... one seeking discretionary relief may not obtain pre-enforcement judicial review of agency action if there is no immediate threat of sanctions for non-compliance, or if the potential sanction is de minimis. Conversely, the court should find agency action ripe for judicial review if the action is final and clear-cut, and if it puts the complaining party on the horns of a dilemma: if he complies and awaits ultimate judicial determination of the action's validity, he must change his course of day-to-day conduct . . . if he does not comply, he risks sanctions or

---

16. Justice Harlan briefly summarized these considerations:

"... [The] basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

17. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

18. It should be noted that the concept of hardship to the parties is not identical to the concept of irreparable injury, a requirement for the issuance of a preliminary injunction. *See A. O. Smith v. FTC,* 530 F.2d 515, 522 (3d Cir. 1976). Because of the disposition made in this case, it is unnecessary to reach the issue of irreparable injury with respect to the documents not yet produced.

injuries including, for example, civil or criminal penalties . . . ." *A. O. Smith v. FTC, supra,* 530 F.2d at 524.

Exxon and Gulf have not established that they are on the horns of any dilemma created by the FTC. At best they have shown that they may suffer if they comply voluntarily with the subpoenas, but they have not shown that they run any risk by not voluntarily complying and awaiting enforcement.

█ FTC subpoenas are not self-executing; they may be enforced only after a proceeding in a federal district court. 15 U.S.C. § 49. *See Atlantic Richfield Co. v. FTC,* 546 F.2d 646, 649 (5th Cir. 1977). If Exxon and Gulf were to refuse to comply voluntarily, the FTC would have to decide whether to abandon the request (concededly very unlikely) or to seek enforcement through an action in a district court. The movants would be able to raise in that action all of the concerns they have asserted here and to litigate them fully in an adversary proceeding. *See Anheuser-Busch, Inc. v. FTC,* 359 F.2d 487, 490 (8th Cir. 1966).

Moreover, Exxon and Gulf do not run any realistic risk of criminal or civil sanctions for not voluntarily complying. This Court has indicated in another context that it does not find 15 U.S.C. § 50 applicable to corporations. *See A. O. Smith v. FTC,* 417 F.Supp. 1068, 1080–81 (D.Del.1976); *see also A. O. Smith v. FTC, supra,* 530 F.2d at 524 and n. 9.[19] Similarly, the likelihood of the FTC imposing civil sanctions, other than an enforcement action, for failure to comply with the subpoenas appears very remote in this case for two reasons. First, the other five plaintiffs in this action have been found in default of the subpoenas

issued to them. The response of complaint counsel has been to request permission of the Commission to file an action in a district court to enforce the subpoena. *See* 16 C.F.R. § 3.38(b). Second, the information sought by the subpoenas concerns the internal organization and record-keeping systems of the various respondents.[20] The sanctions available under 16 C.F.R. § 3.38(a) would be singularly ineffective in remedying the non-compliance. The subpoenas do not seek the type of evidentiary material the FTC will be required ·to produce to establish its case.

█ Briefly stated, Exxon and Gulf have succeeded in making the Court aware of their sincere concern that they may suffer a competitive disadvantage if subpoenaed materials are produced and subsequently released to the public. They have utterly failed to convince the Court, however, that this issue is ripe for adjudication, that is, that their request for a protective order should not properly be heard in the context of an enforcement proceeding. *See Atlantic Richfield, Inc. v. FTC, supra.* This conclusion finds ample support both in the teachings of *Abbott Laboratories* and in the fundamental premise of equitable relief that a court should not exercise its discretionary equitable power if the plaintiff has an adequate remedy at law. *See Anheuser-Busch, Inc. v. FTC, supra,* 359 F.2d at 490; *cf. Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).[21] Accordingly, the motion of Exxon and Gulf for a preliminary injunction with respect to the documents and materials subpoenaed but not yet produced will be denied.

### III. Documents Produced by Gulf

█ Since these documents have been produced, they cannot be the subject of a

---

**19.** The FTC also has adopted this position. Memorandum in Opposition to Exxon and Gulf's Motion for Preliminary Injunction (Doc. 12) at 12.

**20.** Tr. 62; *see generally* Memorandum in Support of Motion of Plaintiffs Exxon Corporation and Gulf Oil Corporation for Preliminary Injunction (Doc. 7) at 17–21.

**21.** The Court is acutely aware that this decision may require Exxon and Gulf who apparently are fully prepared to comply with the subpoenas, to contest those subpoenas. Certainly, a court should avoid if at all possible a result that may cause more litigation. Nevertheless, the result in this case is inescapable. The law cannot be brushed aside in the interest of expediency.

suit seeking pre-enforcement review. Nonetheless, there may be a ripeness problem because the record does not reflect that there is an imminent threat of disclosure to the public.[22] *Cf. FTC v. Texaco, Inc.,* 555 F.2d 862 (D.C.Cir.1977). Because of its conclusion that Gulf cannot satisfy the requirements for the issuance of a preliminary injunction, the Court will decline at this time to resolve the question of ripeness with its accompanying constitutional overtones.[23]

The Third Circuit has summarized the standards to be applied in considering the issuance of preliminary injunctive relief:

" '[A]s a prerequisite to the issuance of a preliminary injunction the moving party must generally show: (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo.' *A. L. K. Corp. v. Columbia Pictures Industries, Inc.,* 440 F.2d 761, 763 (3d Cir. 1971). Moreover, this court has repeatedly stated that the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917, 919–920 (3d Cir. 1974).

The harm Gulf seeks to avoid by issuance of the injunction is the competitive disadvantage it may suffer if other oil companies have access to the information. Two avenues of disclosure have been described: 1) Release by a congressional committee that has subpoenaed the materials from the FTC; 2) Release through a Freedom of Information Act suit. On both points, however, Gulf has failed to establish a likelihood of immediate irreparable injury.

The statutory basis relied upon by Gulf to justify the injunction against release to a congressional committee is 15 U.S.C. § 46(f) which bars the FTC from making "public" certain information including trade secrets it obtains. Gulf has not introduced any evidence that Congress intends to request any of the materials already submitted and, thus, has not established any threat of public disclosure. Accordingly, there has not been a sufficient showing of irreparable injury. Further, the District of Columbia Circuit has recently held that mere release to a congressional committee is not barred by section 46(f), absent a showing that the committee intends to release the information to the public. *Ashland Oil, Inc. v. FTC,* 548 F.2d 977 (D.C.Cir.1976). The holding of the District of Columbia Circuit substantially undercuts the probability that Gulf ultimately will succeed on the merits of its claim.

As to the threat posed by a possible Freedom of Information Act suit, it is concluded that the protective order issued by the FTC removes the likelihood of irreparable injury. The protective order requires ten days notice to the supplying party of any request by a citizen, including individual congressmen, for release of the materials. Gulf simply has failed to show that this protection is inadequate to safeguard its interests. The notice period is sufficient to permit Gulf to seek relief if it fears the competitive effect of disclosure.

Therefore, for the reasons discussed, Gulf's motion for a preliminary injunction to prohibit disclosure of the documents it has produced to the FTC will be denied.

**22.** Tr. 114.

**23.** As noted above, the movants did not brief or argue the ripeness issue at all and the FTC considered it only in the context of a pre-enforcement review action, not in the context

alluded to above. Similarly, the FTC has not urged that Gulf waived its right to seek a protective order because of its voluntary production. The Court does not intimate any opinion on that issue.