EXXON CORPORATION, Gulf Oil Corporation, Mobil Oil Corporation, Standard Oil Company of California, Standard Oil Company (Indiana), Atlantic Richfield Company, and Shell Oil Company, Plaintiffs,

v.

FEDERAL TRADE COMMISSION, Calvin J. Collier, Chairman, Paul Rand Dixon, Member, David A. Clanton, Member, and M. Elizabeth Hanford Dole, Member, Defendants.

Civ. A. No. 77–61.

United States District Court, D. Delaware.

Aug. 19, 1977.

See also D.C., 436 F.Supp. 1012.

Thomas Herlihy, III, of Herlihy & Herlihy, Wilmington, Del., for plaintiffs; William Simon, John S. Kingdon, Robert G. Abrams, and Stuart H. Harris of Howrey & Simon, Washington, D.C., of counsel for Exxon Corp.; Jesse P. Luton, Jr., and John E. Bailey, Houston, Tex., of counsel for Gulf Oil Corp.; Andrew J. Kilcarr and Thomas R. Trowbridge, III, of Donovan, Leisure, Newton & Irvine, Washington, D.C., and New York City, of counsel for Mobil Oil Corp.; George A. Sears, Richard W. Odgers, C. Douglas Floyd of Pillsbury, Madison & Sutro, San Francisco, Cal., of counsel for Standard Oil Co. of Cal.; William R. Jentes and Tefft W. Smith of Kirkland & Ellis, Chicago, Ill., of counsel for Standard Oil Co. (Indiana); Robert E. Jordan, III, and Richard H. Porter of Steptoe & Johnson, Washington, D.C., of counsel for Atlantic Richfield Co.; J. Wallace Adair and Keith E. Pugh, Jr., of Howrey & Simon, Washington, D.C., of counsel for Shell Oil Co.

Kent Walker, Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., Michael N. Sohn, Gerald P. Norton, Jerold D. Cummins, and William A. Horne, F. T. C., Washington, D.C., for defendants.

MURRAY M. SCHWARTZ, District Judge.

Exxon Corporation ("Exxon"), Gulf Oil Corporation ("Gulf"), Mobil Oil Corporation ("Mobil"), Standard Oil Company of California ("SoCal"), Standard Oil Company (Indiana) ("Indiana"), Atlantic Richfield Company ("Atlantic Richfield") and Shell Oil Company ("Shell") have filed an action in this Court against the Federal Trade Commission ("FTC") and the Commissioners of the FTC ("Commissioners"). All seven plaintiffs are respondents in an FTC proceeding which, briefly stated, charges them with anti-competitive and monopolistic behavior in the refining and marketing of petroleum and petroleum products.[1] The plaintiffs seek declaratory and injunctive relief to protect from disclosure to Congress or the public documents subpoenaed in the FTC proceeding.

Presently before the Court is the defendants' motion to dismiss, based on, *inter alia*, lack of jurisdiction. Before addressing the merits of the motions, however, the factual background of this case should be outlined.

## I. *Background*

The events which eventually precipitated the filing of this law suit originated with the issuance of certain subpoenas *duces tecum* by the Administrative Law Judge ("ALJ") presiding over the *FTC* case. In an order entered on November 11, 1976, the ALJ authorized the subpoenas as part of the initial discovery in the *Exxon* proceeding. The subpoenas *duces tecum* [hereinafter subpoena] were issued on November 24, 1976.

To protect the respondent oil companies against unjustified public disclosure of confidential subpoenaed information, the ALJ issued a protective order on January 6, 1977.[2] On the same day, the ALJ certified paragraph 9 of the protective order ("paragraph 9") to the Commissioners for their review. *See* 16 C.F.R. § 23(b). Paragraph 9 describes the procedure to be employed if a request is made for information supplied to the FTC by the respondent oil companies.

On January 31, 1977, the Commissioners issued an order modifying paragraph 9.[3] Paragraph 9 provides two different procedures depending on the source of the request for the confidential information. If the FTC receives an official request from a committee or subcommittee of Congress, the FTC is to inform the committee that the company supplying the information deems the matter confidential and is to give the supplying company "ten days' prior notice where possible, and in any event as much advance notice as reasonably can be given."[4] If the request is made by a private citizen or an individual member of Congress, the FTC is to treat the application as made under the Freedom of Information Act and is to give the supplying company ten days' prior notice of its intent to release the requested information. The notice period is intended to provide the respondents with ample time to seek judicial relief from the impending release.

The various plaintiffs in this action have responded differently to the subpoenas issued on November 24, 1976. Exxon and Gulf have begun production of the subpoenaed materials. Counsel for the FTC stated at oral argument that at present Exxon and Gulf are in compliance.[5] The record is somewhat unclear as to the precise steps taken by SoCal, Mobil, Indiana, Atlantic Richfield and Shell (hereinafter referred to as "SoCal plaintiffs").[6] In any event, the

---

1. *In the Matter of Exxon Corp., et al.*, 436 F.Supp. 1012, FTC Docket No. 8934 (filed July 18, 1973). Texaco, Inc. is also a respondent in the FTC action, but did not join in this case.

2. Exhibit C attached to Plaintiffs' Amended Complaint (Doc. 4).

3. Doc. 11 (Exhibit C).

4. Doc. 11 (Exhibit C).

5. Transcript of July 7, 1977 Argument at 3.

6. SoCal and Atlantic Richfield informed the Court by letter that they had made all documents responsive to the subpoenas available to the FTC for inspection and copying. The FTC was permitted to remove, however, only documents deemed non-confidential by the companies.

SoCal plaintiffs have been deemed by the Commission not to be in compliance. Because FTC subpoenas are not self-executing,[7] the Commission authorized the Office of General Counsel to seek judicial enforcement.[8] The enforcement action was filed and is now pending in the District of Columbia.[9]

Dissatisfied with the protective order entered by the Commissioners on January 31, 1977,[10] the plaintiffs filed this action seeking declaratory and injunctive relief which they believe is essential to prevent the unauthorized disclosure of confidential business information to Congress or to the public. Earlier, this Court denied a motion by Gulf and Exxon for a preliminary injunction.[11] The defendants have filed a motion to dismiss plaintiffs' amended complaint. The various grounds in support of that motion will be treated seriatim.

## II. *Jurisdiction Over the Subject Matter*

Defendants have moved to dismiss the amended complaint on the grounds that there exists no statutory basis for the Court to exercise jurisdiction. The plaintiffs in their amended complaint allege that statutory jurisdiction is provided by 28 U.S.C. §§ 1331(a), 1337, 1361, the Declaratory Judgment Act[12] and the Administrative Procedure Act.[13]

■ Neither the Declaratory Judgment Act nor the Administrative Procedure Act provides an independent statutory basis for jurisdiction. It is well-settled that the Declaratory Judgment Act expands the remedies available in the federal courts but does not expand federal jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Further, the Supreme Court recently has held that the Administrative Procedure Act does not provide an independent basis for federal jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also Zimmerman v. United States*, 422 F.2d 326 (3d Cir. 1970). Accordingly, the plaintiffs cannot rely on either statute to invoke the jurisdiction of this Court.

■ Plaintiffs place heavy reliance on 28 U.S.C. § 1331(a) as a jurisdictional basis for this suit.[14] Section 1331(a) provides jurisdiction in cases arising "under the Constitution, laws, or treaties of the United States. . . . ." Plaintiffs allege that the defendants lack authority to issue a protective order which provides adequate protection of the plaintiffs' proprietary interests in the subpoenaed material. In support of this contention, the plaintiffs cite, *inter alia*, the FTC's assertion that it cannot refuse requests for material made by congressional committees.[15] Although, as discussed *infra*, this Court believes that the plaintiffs' emphasis on the protective order as the sole issue is misplaced, nonetheless, it is apparent that the claims asserted do arise under federal statutes and the United States Constitution. The defendants' argument that no statutory jurisdiction exists because no specific demand for disclosure has been made is more properly treated as part of their contention that no constitutional case or controversy exists. Accordingly, it is held that this Court does have subject matter jurisdiction over this case under 28

---

**7.** 15 U.S.C. § 49.

**8.** Reply Memorandum in Support of Defendants' Motion to Dismiss at n.13.

**9.** *FTC v. Anderson, et al.*, Misc. No. 77–0161.

**10.** See text *infra* at 6.

**11.** *Exxon Corp., et al. v. Federal Trade Commission, et al.*, Civ. A. No. 77–61 (filed April 18, 1977) (D.Del.1977).

**12.** 28 U.S.C. §§ 2201–02.

**13.** 5 U.S.C. §§ 701 *et seq.*

**14.** 28 U.S.C. § 1337 grants jurisdiction in cases "arising under any Act of Congress . . . protecting trade or commerce against restraints and monopolies." Since an "Act of Congress" within the meaning of section 1337 must also constitute a law within the meaning of section 1331, resolution of the question of jurisdiction under section 1331 necessarily disposes of the section 1337 issue. *See Exxon Corp. v. FTC*, 411 F.Supp. 1362, 1369 (D.Del. 1976).

**15.** Tr. at 24.

U.S.C. § 1331 provided a case or controversy exists within the meaning of Article III. *See Exxon Corp. v. FTC, supra,* 411 F.Supp. at 1369.

### III. *Constitutional Jurisdiction—Article III*

In its opinion denying the motions of Exxon and Gulf for preliminary injunctions, the Court indicated its concern that the cause of action asserted here might not constitute a case or controversy within the meaning of Article III, Section 2 of the Constitution. This concern derived primarily from the striking juxtaposition of the claim for protection from public disclosure of documents with the representations that there was no imminent threat of any disclosure.[16]

The conclusion that a dispute fails to satisfy the case or controversy requirement may result from a variety of jurisdictional defects. In the instant case, the issue can be stated more precisely as a ripeness problem. *See Anti-Facist Committee v. McGrath,* 341 U.S. 123, 153–56, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). Defendants suggest two ways in which the subject matter of this suit could ripen into a justiciable controversy: (1) The SoCal plaintiffs could continue to refuse to supply any documents and litigate the issue of the protective order in the context of a subpoena enforcement action.[17] Similarly, Exxon and Gulf could cease complying with their subpoenas and await enforcement. (2) As to documents already supplied, Exxon and Gulf could await notice of impending release and then seek judicial relief under the Freedom of Information Act or other relevant statute.

Plaintiffs contend that defendants misconstrue the substance of the amended complaint. That is, plaintiffs conceive this suit as an attack on the authority and adequacy of the January 31 protective order. Thus, consideration about specific documents and disclosure are irrelevant. Plaintiffs argue that the emphasis the defendants place on the documents represents an ill-disguised epi-phenomenal analysis.

The difference between a hypothetical question and a "case or controversy" within the meaning of Article III, Section 2 of the Constitution is one of degree. *See Maryland Casualty Co. v. Pacific Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The issue raised by the defendants' motion in the instant case is whether the controversy is sufficiently definite and concrete to satisfy this constitutional requirement. *See Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The argument that the case is not yet ripe because no request for release has been made on the defendants and because, for the most part, the plaintiffs have not submitted confidential documents to the FTC is deceptively attractive. The defect in the argument lies in its emphasis on the submission of the documents as a condition precedent to any justiciable controversy arising. The plaintiffs herein are faced with a subpoena which requires the production of hundreds of documents for which the plaintiffs contend inadequate guarantees of confidentiality have been provided. The defendants argue that the documents must be submitted and a request for disclosure be made before a challenge to the protective order can be heard. That argument overstates the requirements for a justiciable controversy.

Without derogating the subtlety of this issue, I conclude that the dispute between the parties is sufficiently concrete and adverse to satisfy the requirements of Article III, Section 2. As is discussed more fully *infra,* it is the subpoena which is the cause of the instant litigation. The protective order issue cannot be neatly segregated and treated independently when the injury which the plaintiffs fear derives from the subpoena, not the protective order. For purpose of Article III the dispute has been

---

**16.** Indeed, at the time of the earlier opinion, Exxon had not even begun to turn over documents.

**17.** As noted earlier, the Commissioners have authorized such an action against the SoCal plaintiffs.

joined by the issuance of a subpoena which requires the submission of documents. It is emphasized that the existence of a justiciable controversy depends on constitutional considerations and does not dispose of discretionary factors that may cause a court to decline to exercise its constitutional power to hear the case. *Cf. Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Whether this Court in this proceeding ought to exercise its jurisdiction is an issue which must now be addressed.

## IV. *Discretionary Jurisdiction—Declaratory Judgment Act*

Having concluded that a justiciable controversy does exist, attention is now turned to whether the issues raised herein properly should be the subject of declaratory relief by this district court at this stage in an on-going administrative proceeding. Initially, it should be noted that because the two groups of plaintiffs, the SoCal plaintiffs and Exxon and Gulf, have elected to respond differently to the FTC subpoena, each group is now at a different stage in the administrative process: the SoCal plaintiffs have not agreed to supply all the subpoenaed material whereas Exxon and Gulf have. Accordingly, each group will be considered separately.

### A. *SoCal Plaintiffs*

Turning first to the SoCal plaintiffs, they and the FTC have sought to apply the doctrine of the seminal *Abbott Laboratories* trilogy to the claims of these plaintiffs. *Abbott Laboratories, Inc. v. Gardner, supra; Toilet Goods Assoc. v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Assoc.,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). Undoubtedly, *Abbott Laboratories* and its companion cases have served to transform the once subtle and technical rules governing judicial review of administrative action into "a matter of practical common sense." *Continental Air Lines, Inc. v. CAB,* 173 U.S.App.D.C. 1, 18, 522 F.2d 107, 124 (1974) (en banc). *Abbott Laboratories,* however, involved pre-enforcement review of regulations issued by the Commissioner of Food and Drugs. The claims of the SoCal plaintiffs involve an application for review while a proceeding to enforce the subpoenas is presently pending in another court. Accordingly, it must first be determined whether the *Abbott Laboratories* trilogy applies to the instant case.

In response to the decision of the SoCal plaintiffs not to comply fully with the subpoena and after they had filed this cause of action, the FTC initiated an action in the District of Columbia to enforce the subpoena. *See FTC v. Anderson, et al.,* Misc. No. 77–0161. By their action in this Court, the SoCal plaintiffs seek judicial review prior to resolution of the enforcement action.

In *Abbott Laboratories,* the Supreme Court addressed the general problem of the circumstances under which judicial review of administrative action is proper. In developing an appropriate test for the exercise of jurisdiction, the Court summarized the basic policy it sought to implement:

"... it is fair to say that [the] basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature jurisdiction, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." 387 U.S. at 148–49, 87 S.Ct. at 1515.

These considerations apply with equal force to the instant matter. The SoCal plaintiffs urge that they are not seeking review of the subpoena; they are seeking a protective order to insure adequate protection of their proprietary interests in the subpoenaed information. This proposition, however, ignores one fundamental fact: the litany of horribles recited by the plaintiffs to demonstrate the harm they will suffer is not caused by the protective order, but, rather, by the subpoena. The SoCal plaintiffs attempt to separate two inextricable aspects of the FTC's action, the subpoena and the

protective order. Stated a bit differently, it is not a denial of the plaintiffs' Fifth Amendment rights to issue an inadequate protective order. It may arguably be a constitutional violation to subpoena proprietary information without adequate protection against public disclosure. Notwithstanding the characterization the plaintiffs apply to this suit, it is concluded that their cause of action does seek review of the subpoena insofar as the subpoena and the concomitant potential release of submitted documents endangers what they perceive to be constitutionally and statutorily protected proprietary interests. The issue then becomes whether the existence of a pending enforcement suit prevents this case from being considered an action for pre-enforcement relief.

This Court has noted in an earlier case its understanding of the purpose of permitting pre-enforcement review:

" . . . the dominant purpose of pre-enforcement review is to prevent a party subject to administrative action from being bludgeoned into compliance with some substantial requirement it contends is contrary to law. The potential for such coercion occurs solely because liability for civil and criminal penalties for non-compliance may accrue and accumulate to ruinous levels while an agency's failure to seek enforcement of its orders precludes access to a judicial forum where the complainant may obtain review of its contentions." [citations omitted] *A. O. Smith v. FTC*, 417 F.Supp. 1068, 1083 (D.Del.1976). In the instant case, the coercive effect of the sanctions has been removed by the FTC's initiation of an enforcement proceeding. Thus, although the SoCal plaintiffs have characterized this as a suit seeking declaratory and injunctive relief prior to submission of the subpoenaed documents, the pendency of the enforcement proceeding prevents this action from being considered as pre-enforcement review. Consequently, the Court need not consider the ripeness problem addressed in *Abbott Laboratories. See General Motors Corp. v. Volpe*, 457 F.2d 922, 923 (3d Cir. 1972). What must be determined is whether the

Court should exercise its discretionary jurisdiction under the Declaratory Judgment Act.

The Declaratory Judgment Act provides a discretionary grant of jurisdiction and a court may decline to exercise that jurisdiction under appropriate circumstances. 28 U.S.C. § 2201; see *Eccles v. Peoples Bank*, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). By their request for declaratory relief, the SoCal plaintiffs seek to create a new method for obtaining judicial review of FTC subpoenas. Congress already has established a procedure for obtaining review by requiring a district court proceeding in order to enforce the subpoena. 15 U.S.C. § 49. If this Court were to exercise its discretion under the Declaratory Judgment Act, the result might very likely be unnecessary interference with administrative proceedings, the pursuit of parallel proceedings in this Court and the District of Columbia and the accompanying possibility of different courts reaching inconsistent results. Further, the public interest is not served by permitting such a procedure. Its only attraction is to respondents who wish to choose the time and place for litigating agency action. This Court will not exercise its discretion to disrupt the congressional scheme of administrative procedures in deference to the parties' convenience. Thus, it is concluded that the jurisdiction of this Court should not be invoked to decide the claims of the SoCal plaintiffs. A proper forum for their requests to be heard exists in the enforcement proceeding now pending in the District of Columbia.

The foregoing analysis quite plainly assumes that the SoCal plaintiffs can obtain the relief they seek in the context of a subpoena enforcement action. It necessarily follows that if the court in the enforcement action is not empowered to issue a protective order, the propriety of entertaining the instant case would have to be re-examined, *Cf. New York Stock Exchange, Inc. v. Bloom*, 562 F.2d 736 (D.C. Cir. 1977) (Wright, J., concurring). This possibility is mentioned primarily because the parties have suggested that a recent opinion of the

Court of Appeals for the District of Columbia Circuit has cast some doubt on whether a district court may properly condition enforcement of an agency subpoena upon a protective order. *See FTC v. Texaco*, 555 F.2d 862 n.20 (D.C. Cir. 1977). The application of the *Texaco* footnote to the subpoena at issue in this case properly should be decided by the trial and appellate courts of the District of Columbia Circuit.[18] In light of the considerations discussed above which weigh heavily against exercising jurisdiction and the absence of any clear showing of prejudice that will result from deferring to the enforcement proceeding, the mere possibility that the plaintiffs' claims might not be heard in the enforcement proceeding provides an insufficient basis for entertaining this matter at this time. *See General Motors Corp. v. Volpe, supra.*

### B.  *Exxon and Gulf*

Exxon and Gulf present a different, although related, problem. The cause of action of Exxon and Gulf also does not involve pre-enforcement review, but not because of the pending enforcement action. As noted above, Exxon and Gulf have agreed to comply voluntarily with the subpoena and have begun to turn over documents. They have thereby removed the possibility of an enforcement action. Thus, although the Court again must determine whether to exercise its discretion under the Declaratory Judgment Act, the issue arises in a different context. Of course, Exxon and Gulf may decide at any time to cease voluntary compliance and require the FTC to seek enforcement to obtain the subpoenaed material. Were that to occur, Exxon and Gulf would be in the same position as the SoCal plaintiffs and the foregoing analysis would be equally applicable.

Earlier, it was noted that the SoCal plaintiffs' exclusive focus on the need for a protective order was misplaced inasmuch as the loss of proprietary rights and the potential competitive harm they feared would result from disclosure stemmed primarily from the subpoena. As previously rehearsed, the protective order and subpoena are inextricably related. Exxon and Gulf, however, have attempted by their voluntary compliance to separate the two issues. In effect, they have foregone their right to an enforcement proceeding and now seek to raise in this proceeding only the protective order issue. The analytical approach of Exxon and Gulf is the same as the SoCal plaintiffs. The difference between the two groups of plaintiffs is that the latter have only asserted the separability of the protective order and the subpoena, whereas Exxon and Gulf have attempted to demonstrate the distinction by their actions. I am unpersuaded.

At the time of their decision to comply voluntarily, Exxon and Gulf were fully aware of their right to contest the subpoena and seek a protective order in an enforcement action. Instead, they chose to begin submission of the documents and to ask this Court to enter a protective order. If this Court were to exercise its jurisdiction over the Exxon and Gulf claims, in light of the disposition made with respect to the SoCal plaintiffs, the result would be an open invitation to administrative respondents to evade a congressionally mandated procedure for contesting subpoenas.

The Court is aware that the decision not to exercise its jurisdiction under the Declaratory Judgment Act leaves Exxon and Gulf without judicial relief unless and until they decide to cease voluntary compliance. Nevertheless, that risk existed when they made the decision to comply voluntarily.

---

**18.** It is noted in passing that the statement in the *Texaco* footnote that "it is the agencies, not the courts, which should, in the first instance, establish the procedures for safeguarding confidentiality", would seem to describe exactly what was done in the instant case. The FTC has determined what it considers adequate safeguards and thus judicial review would appear proper. *See FCC v. Schreiber*, 381 U.S. 279, 295–300, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). Indeed, in *Texaco*, the Court of Appeals did not refuse to treat the protective order issue. The majority held that the district court order was too broad and then entered its own order based on the FTC's proposed procedures for maintaining the confidentiality of subpoenaed materials. *FTC v. Texaco, Inc.*, 555 F.2d 862 (D.C. Cir. 1977).

Clearly these two companies continue to retain the power to revise that earlier decision.

Just as with the SoCal plaintiffs, the above conclusion with respect to Exxon and Gulf is rooted in the assumption that the protective order issue can be treated in a subpoena enforcement action. If the District of Columbia courts should decide otherwise, the claims of Exxon and Gulf similarly would have to be re-examined.

For the reasons expressed above, the Court will decline to exercise its jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, and will order the action dismissed without prejudice. Because of this disposition, it is unnecessary to reach the other grounds asserted by the defendants in support of their motion to dismiss.