588 F.2d 895
 1978-2 Trade Cases 62,381
 EXXON CORPORATION, Gulf Oil Corporation, Mobil Oil
Corporation, Standard Oil Company of California,
Standard Oil Company (Indiana), and
Atlantic Richfield Company
v.
FEDERAL TRADE COMMISSION, Calfin J. Collier, Chairman, Paul
Rand Dixon, Member, David A. Clanton, Member, and
M. Elizabeth Hanford Dole, Member, Exxon
Corporation and Gulf Oil
Corporation, Appellants.
 No. 77-2473.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 5, 1978.
Decided Dec. 7, 1978.
 
 William Simon, John S. Kingdon, Robert G. Abrams, Stuart H. Harris, Howrey & Simon, Washington, D.C., for appellant, Exxon Corp.
 Jesse P. Luton, Jr., John E. Bailey, Houston, Tex., for appellant, Gulf Oil Corp.; John H. Chiles, Richard P. Ryan, Walter B. Morgan, Houston, Tex., Benjamin T. Richards, Jr., New York City, of counsel.
 Michael N. Sohn, Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, W. Dennis Cross, Asst. Gen. Counsel, William A. Horne, Atty., Federal Trade Commission, Washington, D.C., Kent Walker, Asst. U.S. Atty., Wilmington, Del., for appellees.
 Before ALDISERT and HIGGINBOTHAM, Circuit Judges, and MEANOR, District Judge.*
 OPINION
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 Exxon Corporation and Gulf Oil Corporation, in response to a subpoena duces tecum, have turned over to the Federal Trade Commission a substantial volume of documents many of which are confidential. They then joined with other plaintiffs in the filing of a complaint in the United States District Court for the District of Delaware seeking a declaratory judgment to the effect that the FTC was not providing and could not provide adequate protection for its confidential documents and that those documents are not obtainable pursuant to the Freedom of Information Act. The district court recognized that it possessed jurisdiction to decide the merits of appellants' claims. The district court decided, however, that it had discretion not to exercise this jurisdiction and dismissed the complaint. Exxon Corp. v. FTC, 436 F.Supp. 1019 (D.Del.1977). Because we conclude that the district court did not have discretion to decline to hear a portion of appellants' claims, we will reverse with respect to certain claims and remand for a decision on the merits of those claims.
 
 I. A HISTORY OF THE PROCEEDINGS
 
 2
 The genesis of this litigation was the filing by the FTC on July 18, 1973 of a complaint (FTC Docket No. 8934) against Exxon Corp., Texaco, Inc., Mobil Oil Corp., Standard Oil Co. of California, Standard Oil Co. (Indiana), Shell Oil Corp. and Atlantic Richfield Co. The FTC alleged that these oil companies have engaged in a variety of anti-competitive practices. On November 24, 1976, a Commission Administrative Law Judge issued substantially identical subpoenas duces tecum to the respondent companies. The information sought related to the companies' organizational structure, record keeping systems and refining operations. On December 9, 1976, the respondent companies jointly moved for the entry of a protective order by the ALJ. The companies did not, however, withdraw the contention they had previously made, in seeking to limit the scope of the subpoenas, that the FTC did not have the authority to issue an order that would adequately protect the confidentiality of the subpoenaed documents.
 
 
 3
 On January 4, 1977, the ALJ, acting under the powers provided in 16 C.F.R. Sec. 3.42(c), issued a protective order covering all the documents subpoenaed. Paragraph 9 of that order provided:
 
 
 4
 9. Notwithstanding any of the foregoing provisions, in the event of a Freedom of Information Act request or an official request from any Congressional committee or subcommittee for disclosure of any document designated "Confidential" hereunder or any information contained therein, authorized representatives of the Commission's Office of General Counsel may inspect the document for purposes of advising the Commission on the request and defending the Commission's interests in court. Furthermore, the Commission shall provide the party which supplied a confidential document with ten (10) days' notice prior to releasing the document in response to such a request or otherwise.
 
 
 5
 The Commission, on January 31, 1977, approved this paragraph with one modification. In the event of a request for confidential documents through congressional or judicial process, the ten-day notice requirement would not apply. Instead, ten days notice would be given where possible, and as much notice would be given as is reasonably possible under the circumstances.
 
 
 6
 On August 1, 1978, the Commission issued an order stating that it was the Commission's intent, in issuing its January 31, 1977 order, to retain the requirement that respondents always be given ten days notice before their documents are turned over to anyone unless in response to congressional or judicial requests. Congressional or judicial requests remain subject to the qualified notice provisions just described.
 
 
 7
 All respondents to the FTC proceedings other than Texaco and Shell filed the instant suit against the FTC on February 18, 1977, seeking injunctive relief. On March 3, 1977, the plaintiffs, now including Shell, filed an amended complaint seeking declaratory as well as injunctive relief.
 
 
 8
 On August 19, 1977, the district court granted the FTC's motion to dismiss the complaint without prejudice. A motion for relief from that dismissal was denied on September 30, 1977.
 
 
 9
 Of the companies to whom subpoenas were issued, only Exxon and Gulf decided to comply. As a result, the FTC commenced an enforcement proceeding against the other companies in the District Court for the District of Columbia on July 27, 1977. That court granted enforcement without modifying the Commission's protective order and rejected claims essentially identical to those made here. FTC v. Anderson, 442 F.Supp. 1118 (D.D.C.1977).
 
 II. VENUE
 
 10
 At the outset, we must face the FTC's contention, not decided below, that venue was improper in Delaware.
 
 
 11
 The applicable venue statute, 28 U.S.C. Section 1391(e), provides:
 
 
 12
 (e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.
 
 
 13
 The summons and complaint in such an action shall be served as provided in the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought. [emphasis supplied]
 
 
 14
 The FTC concedes that one of the original plaintiffs, Standard Oil Co. of California, was properly venued in Delaware because it is a Delaware corporation. A second Delaware corporation, Shell Oil Co., joined in the amended complaint. The FTC argues, however, that 1) one or more properly venued plaintiffs do not provide proper venue for other co-plaintiffs and 2) even if this first contention fails, the early dismissal of the properly venued plaintiffs deprives the other plaintiffs of proper venue. We agree with neither argument.
 
 
 15
 With respect to the first contention, requiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation. The language of the statute itself mandates no such narrow construction. There is no requirement that all plaintiffs reside in the forum district. See Kenyatta v. Kelley, 430 F.Supp. 1328, 1330 n. 7 (E.D.Pa.1977); Candarini v. Attorney General, 369 F.Supp. 1132, 1135 (E.D.N.Y.1974).
 
 
 16
 We are not constrained to reach the opposite conclusion by this court's per curiam affirmance in Abbott Laboratories v. Celebrezze, 352 F.2d 524 (3d Cir.1965), cert. dismissed as to the venue issue, 387 U.S. 136, 157 n. 20, 87 S.Ct. 1520, 18 L.Ed.2d 681 (1967). The district court in the case[1] dismissed twenty-six of thirty-seven plaintiff corporations because of improper venue. The district court, however, discussed only the issue of where corporations reside for purposes of 1391(e) and apparently assumed, without discussion, that all plaintiffs must independently meet 1391(e) requirements. The following is the full text of this court's per curiam opinion affirming the district court:
 
 
 17
 The named appellants in the above entitled case are some, but not all, of the plaintiffs who joined in the complaint for declaratory judgment and injunctive relief.
 
 
 18
 We find no prejudicial error in the dismissal of the complaint as to these plaintiffs, and that action will be affirmed.
 
 
 19
 The Supreme Court in dismissing certiorari with respect to the venue issue noted that this court had not explicitly endorsed the lower court's construction of 1391(e)'s requirements. 387 U.S. 136, 157 n. 20, 87 S.Ct. 1520, 18 L.Ed.2d 681. The Court stated that the dismissed plaintiffs were adequately represented by the remaining corporate plaintiffs and especially by the Pharmaceutical Manufacturers Association which was a proper party to the action and of which all the dismissed plaintiffs were members. This court in affirming because of the absence of "prejudicial error" may also have grounded its decision on the adequate protection of the dismissed plaintiffs' interests by the remaining plaintiffs. Thus, we are not bound by Abbott to construe 1391(e) as requiring that every plaintiff must independently meet that section's test. Instead we hold that venue is proper for this action because at least one plaintiff did reside in Delaware.
 
 
 20
 The FTC's second contention is that the residence of one or more plaintiffs in Delaware does not make all plaintiffs properly venued because the resident plaintiffs' claims were dismissed at the outset of the action. Actually the claims of all plaintiffs were dismissed by the district court through the order which we review today. That dismissal does not, however, deprive nonresident plaintiffs of their right to appeal the district court judgment. This result does not, as the FTC contends, open the doors to the joinder of plaintiffs with frivolous claims so as to circumvent venue requirements. Where a district court finds that such a ploy has been attempted, it may dismiss the frivolous claims and not permit the other parties to use those claims as a basis for providing themselves with proper venue. The relief sought by the resident plaintiffs here was the same as that sought by the other plaintiffs including Exxon and Gulf. The dismissal of those plaintiffs and their failure to appeal does not deprive Exxon and Gulf of proper venue since venue is determined at the outset of the litigation and is not affected by a subsequent change in parties. See 3B Moore's Federal Practice p 25.05, p. 25-167 (2d ed. 1978). We hold, therefore, that venue was proper here.
 
 III. THE ISSUES PRESENTED
 
 21
 This is one of those cases in which the greatest difficulties arise in defining the issues rather than in resolving them. The parties' briefs characterize the issues in divergent terms and, even at oral argument, neither counsel seemed ready to accept the definition of the issues as proffered by the panel.
 
 
 22
 Plaintiffs are seeking three declarations which would provide the basis for other possible relief:1. That the FTC has no sufficient means to enforce any protective order it issues regardless of the facial adequacy of the order's provisions.
 
 
 23
 2. That the terms of the protective FTC order here, do not provide adequate protection for plaintiffs' documents (primarily with respect to its notice provisions) regardless of the mechanisms by which those terms would be enforced.[2]
 
 
 24
 3. That the documents produced pursuant to the subpoena cannot be obtained by third parties by means of the procedures provided by the Freedom of Information Act, 5 U.S.C. Section 552.
 
 
 25
 As mentioned, the district court declined to exercise its jurisdiction under the Declaratory Judgment Act to decide any of these claims. The central issue on appeal therefore is whether the district court abused its discretion in declining to exercise jurisdiction over any or all of the claims. Two comments, one obvious and the other less obvious, must be made with respect to this formulation of the issue. The obvious comment is that we are deciding only whether the district court must hear the merits of the claims; we are not deciding the merits ourselves. The second comment concerns the applicable standard of review. It is clearly the law of this court that the decision to grant or withhold a declaratory judgment is committed to the discretion of the district court and that decision will not be reversed in the absence of an abuse of discretion. See Davis v. Romney, 490 F.2d 1360, 1370 (3d Cir.1974); General Motors Corp. v. Volpe, 457 F.2d 922, 923 (3d Cir.1972). It is also the law of this court, however, that the Declaratory Judgment Act should "have a liberal interpretation." See Simmonds Aerocessories v. Elastic Stop Nut Corp., 257 F.2d 485, 489 (3d Cir.1958); Dewey & Almy Chemical Co. v. American Anode, Inc., 137 F.2d 68, 70 (3d Cir.), cert. denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943). Thus, in this context, the ambit of the district court's discretion is somewhat circumscribed and the range of our review is correspondingly enlarged. At the risk of becoming entrapped in a maze formed by multiple articulations of the standard of review, we will attempt one further elucidation of the standard here. Where the district court has declined jurisdiction, we will not reverse merely because we would decide differently, but the decision to decline jurisdiction will be given closer scrutiny than normally given on an "abuse of discretion" review. We recognize that other courts have applied the "mere error" standard of review in this context,[3] but the law of this court is to the contrary.[4]
 
 
 26
 IV. THE EXERCISE OF JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT
 
 
 27
 The exercise of this discretion must be reviewed within the framework provided by the Supreme Court in the Abbott Laboratories trilogy: Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (Abbott I); Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) (Abbott II); Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967) (Abbott III). These cases involved pre-enforcement challenges to regulations promulgated under the Food, Drug and Cosmetic Act, 21 U.S.C. Section 301 et seq., seeking declaratory and injunctive relief. The Court determined that there was jurisdiction in the federal courts under the Declaratory Judgment Act and the Administrative Procedure Act to decide cases challenging the type of agency action involved there. The Court went on to state:
 
 
 28
 A further inquiry must, however, be made. The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy "ripe" for judicial resolution. Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two-fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.
 
 
 29
 Abbott I, 387 U.S. at 148-49, 87 S.Ct. at 1515 (footnote omitted).
 
 
 30
 The court below considered the Abbott trilogy not to be directly applicable because it considered those cases applicable only to pre-enforcement review. The district court stated that the action before it was not a pre-enforcement review because, by the time of the opinion (though not when the original or amended complaint was filed), the enforcement action by the FTC had already begun in the District of Columbia District Court. Exxon Corp. v. FTC, 436 F.Supp. at 1024. The district court did note that the considerations stated in Abbott "apply with equal force to the instant matter." Id. at 1023. Also, much of the district court's analysis parallels that prescribed in Abbott. We conclude that Abbott's teachings apply to extra-enforcement review rather than merely to pre-enforcement review. Thus, the significant question is not when the instant action was filed or acted upon vis-a-vis the enforcement proceeding, but whether declaratory relief should be made available outside the channels normally provided for the challenge of agency action. Appellants also contend that the Abbott trilogy is inapposite because those cases dealt with "ripeness." The above quotation from Abbott does refer to ripeness, but the ultimate issue addressed is when should a court exercise its discretionary jurisdiction under the Declaratory Judgment Act. Because the Court in Abbott I explicitly found that jurisdiction existed before it proceeded to further analysis,[5] it was clearly not discussing ripeness in the jurisdictional sense or defining justiciability.[6]
 
 
 31
 Since we conclude that Abbott's teachings are applicable here, we will proceed to discuss their application.
 
 
 32
 As the above quotation from Abbott reveals, two primary factors must be analyzed:
 
 
 33
 1. The fitness of the issues for judicial decision.
 
 
 34
 2. The hardship to the parties of refusing consideration.
 
 
 35
 The fitness of the issues for judicial decision is determined by analyzing the subsidiary issues of whether the issues are purely legal or whether they require factual development and whether there has been final agency action. Finality for this purpose is to be given a pragmatic definition. The hardship to the parties is determined by looking to the magnitude and immediacy of the impact likely to result from a denial of judicial consideration.
 
 
 36
 As discussed above, appellants have made essentially three claims for declaratory relief. Each claim must be considered on its own. As to the hardship which would result from denial of judicial consideration, the harm would be the same with respect to each claim. That hardship is the severe competitive injury that could result from public dissemination of appellants' confidential documents. We cannot say that there is a great likelihood that this competitive injury would occur with any immediacy if appellants' claims are not heard by the district court. But this case is so extraordinary in terms of the breadth of the underlying investigation and the volume of documents to be sought that the magnitude of the possible injury outweighs the lack of immediacy for the purpose of our Abbott analysis. Although the exact number of the documents produced is not apparent on this record, the FTC's initial subpoena request was for documents numbering in the tens of millions. Respondents asserted that compliance with a modified request would require the search of hundreds of millions of document pages. See Appellants' Brief, pp. 4-5. A further indication of the scope of the action here is that both the appellants' and the FTC's counsel appear to concur in the estimate that FTC action will not be heard by the ALJ until the mid-1980's and the ultimate conclusion of the proceedings will not be reached until well into the 1990's.
 
 
 37
 We therefore conclude that the extraordinary nature of the discovery here, and the resulting possibility of substantial hardship if judicial consideration at this point is denied, require the exercise of declaratory jurisdiction if the issues are fit for judicial resolution. We do not intimate that any claim for more confidential treatment of documents will meet this prong of the Abbott test. Only the incredible magnitude of the discovery contemplated here has brought us to our conclusion.
 
 
 38
 The FTC contends that the possible hardship just discussed is illusory because Exxon and Gulf could have intervened in the FTC's enforcement proceeding in the District of Columbia or could have refused to comply with the subpoena and thereby become party to the enforcement proceeding or finally could refuse to comply with future subpoenas[7] and litigate the issues at a future enforcement proceeding. With respect to the possibility of intervention in the enforcement proceeding, we note that appellants' action was filed prior to the enforcement action. The enforcement proceeding has already been completed in the district court and is now on appeal to the District of Columbia Circuit. We think it improper to refuse to hear appellants' claims merely because they refused to abandon their action in order to intervene in a subsequently filed action. With respect to the FTC's assertion that appellants could have refused to comply with the subpoena or can refuse to comply with a future subpoena, we deem it unfair to penalize appellants for expeditiously complying with the FTC's request. "A declaratory judgment ... should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, California, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948). Discouraging compliance with subpoenas by making the availability of relief from inadequate protective orders always conditioned on refusal to comply with the subpoena would not serve the public's interest in administrative efficiency and judicial economy. Hence we refuse to alter our conclusion with respect to hardship on the basis that appellants could refuse to comply with past or future subpoenas and thereby litigate their claim in another forum.
 
 
 39
 Thus we reach the question of whether the issues here are fit for judicial resolution. We must therefore discuss whether the agency action here is final and whether the issues are purely legal or require factual development. The FTC has already reviewed the most crucial provision of the ALJ's protective order and we have no reason to believe that any further revision or review of the protective order is contemplated. Thus the finality requirement is met. The second question is whether the issues are purely legal or whether further factual development is necessary. With respect to appellants' first two claims (that the FTC does not have the power to provide adequate protection for their documents regardless of the terms of the order and that the particular protective order does not, by its terms, provide adequate protection), the issues seem to be purely legal and any factual development could be easily achieved in the district court. With respect to appellants' claim that their documents could never be turned over to third persons pursuant to the Freedom of Information Act, however, there is a need for further factual development that could not be obtained at this time in the district court. Who requests which document for what purposes may well be relevant to any final determination of this issue. Thus here, as in Abbott II, judicial appraisal would be on a "much surer footing in the context of a specific application ... than could be the case in the framework of the generalized challenge made here." 387 U.S. at 164, 87 S.Ct. at 1524.[8] Thus, appellants' first two claims are both fit for judicial resolution and substantial hardship may result to appellants if there is no judicial consideration. Therefore, the district court did not have discretion to decline to hear the merits of these claims. With respect to the Freedom of Information Act claim, however, the issues are not sufficiently fit for judicial resolution to warrant the exercise of declaratory jurisdiction. Therefore, the district court's refusal to exercise jurisdiction to hear that claim was proper.
 
 V. THE ISSUES ON REMAND
 
 40
 We have already noted that appellants should not be penalized for complying with the subpoena. Neither, however, should they be given an advantage in challenging the protections provided by the FTC. Appellants' claims should be considered under the same test in the district court on remand as they would in an enforcement proceeding. The Supreme Court, in FCC v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965), has made it abundantly clear that it is within the discretion of an agency to determine what protection must be given the confidential information it receives in the course of its investigations. A court cannot impose its own set of protections unless the agency abused its discretion in determining what protection was necessary. The FTC concluded here that the terms of its protective order provided adequate protection for appellants' documents. It also concluded that the available sanctions, including the criminal penalty imposed by 18 U.S.C. Sec. 1905 on employees of the federal government for disclosure of confidential information are adequate to enforce that protective order. The district court on remand must determine whether the FTC abused its discretion in reaching those conclusions.[9] Otherwise, under Schreiber, there would be no basis for judicial intervention.
 
 
 41
 In affirming the dismissal of the Freedom of Information Act claim, we do not prevent the district court from considering whether the FTC's protective order provides for adequate notice to appellants prior to the turning over of their documents pursuant to a Freedom of Information Act request. This question relates to the adequacy of the FTC order and therefore will be properly before the district court on remand.
 
 VI. CONCLUSION
 
 42
 For the foregoing reasons, the judgment of the district court will be affirmed insofar as it dismissed the Freedom of Information Act claim and will be reversed insofar as it dismissed the claims pertaining to the adequacy of the terms of the FTC's protective order and the adequacy of the FTC's enforcement mechanisms. We will remand for the district court to decide these last two issues in accordance with the discussion set forth in this opinion. We, of course, do not intend to limit the district court's discretionary power to transfer or consolidate the remanded portion of this action with the enforcement action commenced by the FTC in the District of Columbia[10] if such transfer or consolidation appears desirable and feasible. See 28 U.S.C. Sec. 1404(a).[11]
 
 
 
 *
 H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 Abbott Laboratories v. Celebrezze, 228 F.Supp. 855 (D.Del.1964)
 
 
 [2]
 The difference between the first two claims for relief is illustrated by the following examples. If the protective order provided that confidential documents could be turned over to a third party without requiring any notice to appellants' counsel and if the ALJ were somehow given the contempt powers now possessed by district courts, it might be argued that the terms of the protective order were inadequate [claim 2] but the enforcement mechanisms would be clearly adequate [claim 1]. If, however, the order provided that documents could only be turned over after appellants' counsel had given their consent in writing, but a person who violated that order was only subject to a civil penalty of $25, there would be little basis for appellants to challenge the terms of the protective order [claim 2], but the enforcement mechanisms would be clearly inadequate [claim 1]. Ultimately, of course, both claims relate to the adequacy of the protection being afforded appellants' documents, but each claim refers to a different aspect of that protection and, therefore, the two are properly analyzed separately
 
 
 [3]
 See, e.g., Beacon Construction Co. v. Matco Electric Co., 521 F.2d 392, 397 (2d Cir.1975); Alsager v. District Court of Polk County, Iowa, 518 F.2d 1160, 1163 (8th Cir.1975)
 
 
 [4]
 See Davis v. Romney, supra; General Motors v. Volpe, supra
 
 
 [5]
 387 U.S. at 148, 87 S.Ct. 1507
 
 
 [6]
 Although Abbott was referred to in General Motors Corp. v. Volpe, 457 F.2d 922, 923 as considering ripeness in a "jurisdictional sense," this statement was made in dictum
 
 
 [7]
 The FTC issued new subpoenas on January 12, 1978. Motions to quash these subpoenas were denied by the ALJ per his order of September 8, 1978. The ALJ did order certain modifications of those subpoenas
 
 
 [8]
 The Supreme Court held, in N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), that witnesses' statements in pending unfair labor practice proceedings are exempt under the Freedom of Information Act and that such determination need not be made on a case-by-case basis. Since the category of requests involved there was much narrower than that here, that decision does not affect our conclusion that case-by-case determination of Freedom of Information Act claims is necessary here
 
 
 [9]
 The District of Columbia District Court has already ruled that there has been no such abuse of discretion. FTC v. Anderson, supra. Appellants here, of course, were not parties to that action and are therefore not bound by the ruling there
 
 
 [10]
 FTC v. Anderson, supra
 
 
 [11]
 After this opinion was drafted, counsel for the FTC forwarded to the court copies of the opinions in the following cases: Exxon Corp. v. FTC, No. 77-1302, --- U.S.App.D.C. ----, --- F.2d ---- (1978) and Reuben H. Donnelley v. FTC, 580 F.2d 264 (7th Cir.1978). Counsel for Exxon forwarded to the court a copy of the opinion in the case, Wearly v. FTC, --- F.Supp. ---- No. 77-1860 (D.N.J. October 18, 1978). After careful consideration of these rulings, we adhere to our decision